## UNITED STATES v. HARTENFELD.
### No. 7208.

Circuit Court of Appeals, Seventh Circuit.

June 11, 1940.

Julian C. Ryer, of Chicago, Ill., for appellant.

Val Nolan, U. S. Dist. Atty., and B. Howard Caughran and Paul A. Pfister,

Asst. U. S. Attys., all of Indianapolis, Ind., for appellee.

Before EVANS, TREANOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The indictment consisting of nineteen counts charged in the first eighteen a scheme to defraud and the use of the United States mails in the furtherance of the same in violation of Section 215 of the Criminal Code, 18 U.S.C.A. § 338, and in the nineteenth count charged that the appellant and Ethel Pitt Donnell, Robert D. Beckett and John K. Knapp unlawfully conspired to use the United States mails in furtherance of a scheme to defraud, 18 U.S.C.A. § 88. The case was tried to a jury. Co-defendants Donnell and Beckett pleaded guilty. The jury returned a verdict of not guilty as to John K. Knapp and a verdict of guilty on all counts as to appellant and judgments were rendered upon the verdicts. Appellant was sentenced to imprisonment for a term of ten years and ordered to pay a fine of $5,000. To reverse this judgment he appeals.

The scheme charged in the indictment in substance is that the appellant and his co-defendants, by certain false and fraudulent representations with reference to the financial ability, standing, integrity and business operations of American Terminals & Transit Company, Green River Valley Terminal Company, Inc., Green River Valley Coal Company, Inc., and Chicago, Ohio & Mississippi Transit Company (of which the defendants were stockholders, directors, officers and employees), would induce the persons intended to be defrauded, by means of letters sent through the United States mails and by means of oral communications, to assign, transfer and deliver to the defendants and the named corporations valuable building and loan association stocks, bonds of the United States government and other securities, as well as cash, in trade and exchange for the delivery to the persons intended to be defrauded, certificates of indebtedness of the Green River Valley Terminal Company and income bonds of the American Terminals & Transit Company.

On oral argument the only point stressed was that the evidence fails to sustain the verdict of the jury, although other points are raised in the brief. These will be discussed in due course.

There is no controversy concerning the facts. In substance the evidence proved that Green River Valley Coal Company, Inc., was organized on March 13, 1933, to take over a lease which appellant held on a terminal site on the Ohio River at Evansville, Indiana, containing an option to purchase the site. Appellant transferred the lease to his co-defendant Donnell and she assigned it to Green River Valley Terminal Company, Inc. All of the stock of Green River Valley Coal Company was originally issued to Chicago, Ohio & Mississippi Transit Company, a water transportation company. That company sold the stock to Green River Valley Terminal Company, and in 1937 the stock was transferred to American Terminals and Transit Company in exchange for 1,000 shares of its stock. During all of the period here in question appellant was either president or vice president and general manager of all four corporations.

It further appeared that for the period between 1934 to June, 1937, Green River Valley Terminal Company had a net loss of $36,588.24, and Chicago, Ohio & Mississippi Company had a net loss of $27,915.05 for the period 1932 to June, 1937. American Terminals and Transit Company was organized on November 20, 1934, with an authorized capitalization of 2,500 shares of no par value, Green River Valley Terminal Company and Green River Valley Coal Company each holding 999 shares and appellant and co-defendant Donnell each holding 25 shares. This company showed a net operating loss of $10,500 for the period January, 1935, to June 30, 1937. It had outstanding on June 30, 1937 $380,000 of ten-year income bonds on which two installments of interest had been paid, the last payment having been paid on January 1, 1936.

These four corporations issued and exchanged with the public, securities of the face value of over $1,000,000, for which they acquired cash or other valuable securities and out of which they realized in cash $568,231.99; they borrowed from other sources $82,993.55 and secured $10,000 from the sale of capital stock, so that they received in cash during the period of their operations $661,225.44. During the period in question appellant received $55,852.94, Donnell $76,259.50, and Beckett $8,307.81 or a total of $140,420.25 for salaries and drawing accounts. In the fall of 1937 the corporations were placed in receivership.

Contacts with the person intended to be defrauded were made by Donnell and Beckett or both. The evidence of the Government consists of the testimony of 67 witnesses, 12 of whom were named in the indictment as persons intended to be defrauded and 40 not named in the indictment, but who were of the same class as the persons intended to be defrauded. Space does not permit a recitation in detail of all such proof. The testimony of the witnesses concerning the representations made to them by Donnell and Beckett were in most instances very similar. Appellant did not testify or offer any evidence in his behalf. The substance of the testimony offered by the Government proved that the statements made by Donnell and Beckett to the persons intended to be defrauded were false and fraudulent. All of these persons testified that Donnell or Beckett, and in some cases both, made misleading and false statements relative to the financial standing and integrity of these four corporations. This evidence established the fact that Donnell or Beckett stated that the Green River Valley Companies were a great investment; that it was a wonderful investment; that the coal was paid for and the land was clear; that all four companies were clear and in A–1 condition; that it was foolish to leave their money in building and loan stock; and that they would receive a great deal more if the money was invested with the four companies. It is clear that these unfortunate people would not have parted with their money and securities if they had not been deceived.

The fraudulent misrepresentations and the fleecing of the public seems to have commenced in August of 1933 and continued well into the fall of 1936 and presented heartbreaking experiences. Many of the victims were widows well up in years, some were members of the clergy, while others were blind and crippled. Typical is the case of Clara Henning who testified: "I live in Bloomington, Indiana. I have been a widow for 21 years. My legs were amputated seven years ago. I had some negotiations with Beckett about some building and loan stock I owned in the Railroad Men's and the Celtic totalling $8,500, all of which I turned over to him. He gave me some notes of the Green River Valley Terminal Company for my stock, which he said was a great company thoroughly reliable." Or that of Mamie

Coleman who testified: "I am 67 years old, a widow. I had almost $13,000 in Providence Building & Loan stock. Ethel Pitt Donnell got $10,850 of it, for which she gave me notes of the Green River Companies. She promised six per cent interest and that every six months she would give me a certain amount of money on the principal, and that all the principal would ultimately be paid back in installments. She got all the stock I had and left me without a penny. Mrs. Donnell told me that it was a gold mine, and if I put my money in there I would be worth $25,000 in two years."

Mary Angrick testified: "I am 87 years old, a widow. I am blind and have been for a couple of years. I had some transactions with Mrs. Donnell. She promised us anything. She said, 'Anytime you need money for the operation I can give it to you,' and when I needed money for the operation, she couldn't give me nothing. My daughter and I owned Celtic Building and Loan stock of the face value of something like $1930. Mrs. Donnell got the stock and I got not a cent back."

The record further discloses it was appellant who conceived the idea of exchanging notes of the company for building and loan stocks, for which he had discovered a market in Indianapolis, growing out of the fact that the stock was readily acceptable at face value in payment of the company's indebtedness or in acquisition of property. The evidence also established the fact that as general manager he carried on correspondence calculated to allay the apprehensions of the victims and lull them into a sense of security. He knew that the persons from whom these securities were being obtained were being deceived and on one occasion in November of 1934 stated to Donnell: "You go back and see them again and get them a good meal, feed them well and then take their money." Moreover, it was appellant who signed practically all contracts, including many of the securities issued by the companies and sold to the public, as well as income tax returns showing that all four of the corporations were constantly losing money, while he was writing letters forwarded by the United States mails to victims telling them that the companies were in good financial condition, that business was on the increase and that their investments were safe and sound.

■ To say, under this state of the record, that the evidence fails to sustain the verdict, is to deny the obvious. On the contrary, we are of the opinion that there is not even the semblance of a doubt that a fraudulent scheme was planned and devised and that the mails were actually used and were a part of the scheme devised by the defendants to carry out the fraud; and the evidence connecting appellant with the fraud is just as persuasive as the evidence of the fraud itself and presented a jury question. United States v. Morley, 7 Cir., 99 F.2d 683.

■ It is contended that the District Court erred in denying appellant's motion for a continuance. The record discloses that the indictment was returned on June 6, 1939. He was arraigned on June 13, 1939, and entered a plea of not guilty. Thereupon the court in the presence of appellant and his counsel announced that the case was set for trial on November 13, 1939, that date being satisfactory to appellant and his counsel. No further proceedings were had until November 4, 1939, at which time co-defendant Donnell filed a motion, appellant joining therein, requesting a continuance. The District Court, after due consideration, denied the motion, stating that the case had been assigned for trial five months in advance of the trial date, that each defendant had had adequate counsel and sufficient length of time to properly prepare his defense. The action of the trial court upon an application for a continuance is purely a matter of discretion and not subject to review by this court, unless it be clearly shown that such discretion has been abused. Tinkoff v. United States, 7 Cir., 86 F.2d 868, 877 and cases therein cited. We are unable to say that in the instant case that discretion was abused.

■ Unsubstantial, too, is the contention that the trial court denied appellant his constitutional right to be properly represented by counsel. It appears that on September 15, 1939, appellant personally represented to the court that he was without an attorney and requested the court to appoint one to represent him, suggesting the names of three reputable and able members of the Indianapolis bar. On September 16, 1939, the court appointed one of the three named to represent and defend appellant. The attorney so appointed was a substantial and trustworthy member of the bar, having been engaged in the practice of law since 1904.

■ The point is also made that notwithstanding his desire to testify, appellant was deprived of that right by the conduct of his counsel. This too is without merit. The matter was brought to the attention of the trial court during the consideration of a motion for a new trial, at which affidavits and counter-affidavits were submitted. The trial judge exonerated counsel and found as a fact that appellant's attorney had not refused to allow his client to testify.

■ It is further contended that co-defendant Donnell was permitted in the presence of the jury to enter a plea of guilty, to the prejudice of appellant. The fact is that she withdrew her plea of not guilty and pleaded guilty out of the presence of the jury. However, it became necessary for the court to explain her absence during the remainder of the trial and in so doing it instructed the jury that the fact that Donnell pleaded guilty should not be considered as any evidence of guilt of the other two defendants. Under the circumstances, we are not ready to say that the action of the court was prejudicial to the appellant.

■ Finally, it is insisted the court erred in overruling the motion for a new trial. It is well settled that the disposition of a motion for a new trial rests within the sound discretion of the trial judge. He may set aside the verdict and grant a new trial. But his action in so doing or refusing is not subject to review by this court except for clear abuse of discretion. United States v. Holt, 7 Cir., 108 F.2d 365, 369.

We have examined the bill of exceptions and are satisfied that the case was carefully and impartially tried, and that there was no error effecting any substantial right of the appellant and the judgment must therefore be affirmed.

Affirmed.