**UNITED STATES of America,**
**Appellee,**

v.

**George V. ARLEN, Appellant,**
**No. 198, Docket 24751.**

United States Court of Appeals
Second Circuit.

Argued Dec. 11, 1957.

Decided Feb. 24, 1958.

John C. Broughton, Asst. U. S. Atty., Western District of New York, Buffalo, N. Y. (John O. Henderson, U. S. Atty., Western District of New York, Buffalo, N. Y. on the brief), for appellee.

David E. Pitcher, Jr., New York City (Harold H. Corbin and Corbin, Bennett & Delehanty, New York City, on the brief), for appellant.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

■ The sole question on appeal is whether appellant, George V. Arlen, was deprived of his rights under the Sixth Amendment by being required to stand trial without counsel. A jury convicted him on eleven counts of mail fraud, 18 U.S.C.A. § 1341, and for conspiracy, 18 U.S.C.A. § 371, for which he was sentenced to five years imprisonment on each count, to be served concurrently. Since the record reasonably indicates that Arlen was able to retain his own counsel and failed to do so although more than four months elapsed from indictment to trial, we feel that Judge Burke properly treated his conduct as a waiver of his right to be represented by counsel and we find no deprivation of Arlen's constitutional rights.

Arlen and four others were indicted in the Western District of New York on March 13, 1956 on one count of conspiracy and seventeen counts of mail fraud, all arising out of an alleged confidence scheme whereby they defrauded Augustine J. Cunningham of several hundred thousand dollars. Defendant Leo Hampton pleaded guilty and the government was granted a severance of trial against "Packy" Lennon and Aldus Turner. Arlen was tried only with the defendant Harold Odom, who was found guilty on four counts. Odom filed notice of appeal but has submitted no briefs and did not join in this appeal.

Arlen was arraigned on March 26, 1956 and entered a plea of not guilty. Previously, on December 30, 1955, he had filed an appearance bond in the sum of $20,000, and he remained at large on this bond until the jury's verdict on July 23, 1956. On May 8, despite the efforts of the defendants to adjourn the trial until the next term, Judge Burke set the case for June 25, the last available date in the term. Apparently the judge was cog-

nizant of the fact that Cunningham, the principal government witness, was then 77 years old. Cunningham has since died.

Unsuccessful in his initial efforts to have the case adjourned, Arlen wrote Judge Burke on June 13 requesting a continuance, stating that his attorney of record, William B. Mahoney, of Buffalo, had withdrawn "several days ago" because of Arlen's "inability to pay the balance of the fee," that trial at that time would have a detrimental effect on his wife's health, and that he needed time to raise funds to avail himself of "the services of a very able attorney." In this letter Arlen acknowledged that he might be able to obtain a court appointed attorney but emphasized that it was "most imperative I secure the services of counsel of profound ability who will take a personal interest in my case."

Judge Burke, before denying the continuance, first talked with William B. Mahoney and learned that the attorney had told Arlen three weeks before, in May, that he would withdraw unless the balance of the fee was paid. (Arlen later twice stated to the jury that he had paid $2,000 to Mahoney.) In his letter of June 15 replying to Arlen, Judge Burke expressly referred to the possibility of court assigned counsel, stating "I have no facts before me which would indicate that you are an indigent person so that you would require the services of a court appointed counsel because of your financial inability to pay."

Apparently Arlen did not again communicate with the court until June 24, when he informed Judge Burke that he had entered St. Joseph's Hospital, Yonkers, New York, on that day. The judge then adjourned the trial until July 16. On July 14 a Dr. Frank A. McCarthy of Yonkers wrote the judge that he had treated Arlen from June 23 until June 28, when Arlen was discharged from the hospital, and that another doctor, Robert D. Tarpey, had seen Arlen in consultation and was of the opinion that he was suffering from a coronary insufficiency which made a postponement of a court appearance until mid-September or early October advisable. Meanwhile, apparently at the instance of the government, the Public Health Service examined Arlen on July 12 and found no incapacitating pathological state or condition of disturbed physiology. The letter of its Medical Director, John L. Wilson (Court's Exhibit 5), advised the government that Arlen was "physically able to withstand trial." Arlen himself later admitted that a cardiogram had shown nothing.

On the morning of July 16 Arlen requested an adjournment until later in the day for the purpose of consulting a lawyer. He said he had called a Mr. Donovan that morning. His motion was denied after a colloquy between Arlen and the judge. Arlen insisted that he had not had ample time to obtain counsel because he was in the hospital and that he had made every effort to get an attorney but that none wished to become involved in the case because of its being tried during the summer. Judge Burke pointed out that the case had been set six weeks in advance, that William B. Mahoney had withdrawn three weeks before Arlen informed the court of the fact, and that he had been in the hospital for only a few days.

Further, indicating that he had personally inquired into the extent to which Arlen had attempted to obtain representation, Judge Burke rejected the contention that the summer trial had resulted in an inability to get counsel by stating "I have heard several attorneys around town you have discussed it with * * * If I have any knowledge about the case, all you have to do is pay (a lawyer) and he will start work * * * (Y)ou want the top attorneys in the case. If you can't pay him you can't get him. I can't help it if you want the most expensive attorney and haven't got the money to pay him."

Neither here nor elsewhere in the argument on the application for adjournment did Arlen take exception to this characterization of his attempts to obtain counsel nor did he state that he was financially destitute and desired court ap-

pointed counsel. Indeed, the court again stated "* * * I explained * * * at the opening of the term why (this case) should be tried now. I think you have had ample time since the first of May. No reason (has been) advanced why the Court should appoint a lawyer." In reply Arlen merely insisted "I would like to get my own lawyer."

The trial started on July 16 with the selection of the jury. During the questioning of veniremen, Arlen returned to the same theme and stated "I would like to say something on the record. I would like to say I did retain one lawyer whom I paid $2,000, and who withdrew from the case (when) I was unable to pay the balance of his fee. I have been sick and hospitalized and I did not have ample time to secure another attorney * * * Under the circumstances, I feel I have not been given proper opportunity to defend myself, and my constitutional rights." In reply Judge Burke reminded Arlen "You did not tell this Court you are indigent and not able to hire a lawyer." Arlen said "I told the Court in court I did not have money to retain counsel." Again the Court reminded him "You never have asked me to assign counsel up to now," and Arlen replied "No, sir." When Judge Burke said to Arlen "In my correspondence, I told you that there had been no circumstances brought to my attention which indicated that you were an indigent person, and the Court could and should appoint a lawyer" he answered *"That is definitely true. However, I did want to secure representative counsel, and I don't believe I have had an opportunity to do so."* (Emphasis supplied.)

After the jury was selected in the morning, the trial was adjourned to the following day. Thus Arlen actually did have most of July 16 in which to consult a lawyer but he made no further statements regarding Mr. Donovan or any other attorney.

On July 17, in his opening statement to the jury, Arlen reiterated all the reasons that he had given in his efforts to obtain continuances—that he had no attorney, that his wife was sick, that he had paid an attorney $2,000, that he had been in the hospital, that he did not have ample time to obtain counsel, that he consulted several attorneys who did not wish to take the case because of the summer and the short time before trial. He made no mention of a coronary insufficiency as the reason for his hospitalization, but for the first time referred to a "hurt back." Financial inability to retain counsel was not in his catalogue of troubles.

The mandate of the Sixth Amendment that "in all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense" has been amplified by Rule 44, Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides:

"If the defendant appears in court without counsel, the court shall advise him of his right to counsel and assign counsel to represent him at every stage of the proceeding unless he elects to proceed without counsel or is able to obtain counsel."

■ Although the right to assistance of counsel is absolute, United States v. Morgan, 2 Cir., 1955, 222 F.2d 673, the exercise of that right is subject to the necessities of sound judicial administration. Further, the right itself, being personal, may be waived. See Johnson v. Zerbst, 1938, 304 U.S. 458, 464, 58 S. Ct. 1019, 82 L.Ed. 1461. We think it clear that although a defendant able to retain counsel is entitled to a reasonable time to secure counsel, he may not indefinitely postpone trial by continued applications for more time to seek representation. Whether additional time should be granted is within the sound discretion of the trial court. Further, where a defendant able to retain counsel has been advised by the court that he must retain counsel by a certain reasonable time, and where there is no showing why he has not retained counsel within that time, the court may treat his failure to provide for his own defense as a waiver of his right to counsel and require such defendant to proceed to trial without an attorney. Such a waiver is similar in its conse-

quences to an election made by an indigent defendant.

This case is such a waiver. An examination of the record shows (1) that Arlen knew of his right to assistance of counsel, (2) that Judge Burke was justified in concluding that Arlen was able to retain counsel, (3) that the judge allowed him a reasonable time within which to retain other counsel after his first attorney withdrew, and (4) that Arlen never gave any good reason why he was unable to retain counsel during the time allowed. Full opportunity having been allowed Arlen to avail himself of his rights under the Sixth Amendment, his claim that he was deprived of his rights is without basis, as his failure to act within a reasonable time was a waiver of those rights.

The events from early May to July 16 show that Arlen was allowed reasonable time to retain other counsel. The orderly administration of justice does not permit unlimited delays in order that a defendant may secure counsel. It is also of public importance that defendants be tried while those whom they have allegedly defrauded are still alive to tell about it. To what extent continuances for that purpose should be granted is within the sound discretion of the District Court, and a refusal is justified if the defendant has had a reasonable opportunity to obtain representation. Kobey v. United States, 9 Cir., 1953, 208 F.2d 583, 592; Spevak v. United States, 4 Cir., 1946, 158 F.2d 594, 597, certiorari denied 330 U.S. 821, 67 S.Ct. 771, 91 L.Ed. 1272; United States v. Hartenfeld, 7 Cir., 1940, 113 F.2d 359, certiorari denied 311 U.S. 647, 61 S.Ct. 30, 85 L.Ed. 413.

We see no abuse of discretion here. After the filing of the indictment Arlen had over three months to prepare his defense and he was informed six weeks in advance that trial was set for June 25. The trial was delayed a further three weeks because of Arlen's four or five day hospitalization. Over six weeks elapsed from the time William B. Mahoney withdrew until the case was actually brought to trial. When Judge Burke initially set the trial date he had emphasized the necessity of an early trial. The wisdom of the decision not to wait until the fall term is underscored by the fact that Cunningham, the principal and indispensable prosecution witness, died during the period between conviction and appeal. The defendant had ample opportunity to secure counsel and prepare his defense before July 16. Judge Burke was clearly right in requiring the trial to proceed at that time.

Arlen now contends that the court had a duty to appoint counsel for him. But we are of the opinion that Judge Burke was justified in concluding that Arlen was able to retain his own counsel and that he had waived his right to the assistance of counsel. The District Court was not required to appoint counsel in such a case.

Arlen knew of his right to court appointed counsel if he was without means to retain his own. The exchange of letters with Judge Burke after Mahoney had withdrawn as Arlen's counsel shows this as Arlen referred to and rejected the possibility that he might obtain court appointed counsel. Judge Burke's letter was an invitation to Arlen to show that he lacked financial resources so that the Court could help him.

Thus, although Arlen knew of his rights he never made any showing that he was entitled to court assigned counsel. Arlen's failure to accept the District Court's invitation to show that he needed help in retaining counsel can only be construed on this record as meaning that he could not show that he was without means to retain counsel himself. Since it is implicit in Johnson v. Zerbst, supra, and explicit in Rule 44 of the Federal Rules of Criminal Procedure, supra, which codified that decision, see Spevak v. United States, supra, 158 F.2d at page 596, that counsel need not be assigned if a defendant is able to obtain his own counsel, this course of conduct properly was held to be a waiver. As Chief Judge Parker said in Spevak v. United States, supra, 158 F.2d at 596:

"It seems clear that an accused who is able to employ counsel and fails to do so after being afforded opportunity, thereby waives the right and may not urge lack of counsel as excuse for delay."

It seems to us that Arlen's failure to obtain counsel was a stratagem calculated to defeat the court's order that his case be tried in July 1956. At all times and until his conviction Arlen was at large on $20,000 bail. Arlen's brief hospitalization in June and his later abandonment of the claim of a heart condition after his examination by the Public Health Service show the lengths to which he went in his attempts to postpone the evil day of trial. His employment of two doctors and his four or five day visit to a hospital in an attempt to plead ill health are also evidence that he was not without resources. The appellant's continued reiteration of his intent to secure personal representation reflects an awareness of his ability to obtain counsel. Indeed on the first morning of trial, when Judge Burke stated that Arlen had never indicated that he was an indigent person, his only rejoinder was that he thought he was entitled to more time to secure his own attorney.

Our view that Arlen's failure to retain counsel was part of his strategy of delay is further borne out by an examination of the trial record. The evidence of Arlen's guilt was overwhelming; it showed that he and his confederates extracted more than $300,000 from Cunningham over a period of about four years by leading him to believe that he had inherited part ownership in valuable patent rights and that certain payments were necessary to obtain full enjoyment of these rights, which representations had no foundation in fact. Arlen himself picked up $80,000 in cash from Cunningham and gave him a note of one of the conspirators for over $300,000. Arlen did not take the stand and called no witnesses. His co-defendant, Odom, who was represented by counsel during the trial, likewise remained mute and produced no evidence. Indeed,

Arlen does not question the sufficiency of the proof to sustain his conviction.

During the course of the trial which lasted until July 23 and consumed six court days, Arlen intelligently cross-examined government witnesses on several occasions. Although defendant Odom's attorney did not represent Arlen, all objections made by Odom inured to Arlen. Judge Burke conducted the trial with scrupulous fairness and allowed Arlen great latitude in cross-examination and in his statements to the jury.

While more specific interrogation and findings by the district judge would be helpful in situations such as this where a defendant indulges in so many equivocal statements, we believe that the orders of the District Court in this case were amply supported by the record. Arlen was granted all the protection of his rights which the Constitution, the Federal Rules and fair dealing require, and he was duly and properly convicted of an offense of which he was undeniably guilty.

The conviction is affirmed.