303 F.2d 536
 Dock Perry GLENN and William M. Belvin, Appellants,
v.
UNITED STATES of America, Appellee.
Ronnie J. EVERITT, Appellant,
v.
UNITED STATES of America, Appellee.
Ronnie J. EVERITT and Clifton Hawkins, Appellants,
v.
UNITED STATES of America, Appellee.
Clifton L. HAWKINS, Appellant,
v.
UNITED STATES of America, Appellee.
 Nos. 18859-18861, 18940.
 United States Court of Appeals Fifth Circuit.
 May 25, 1962.
 
 S. Gunter Toney, Tallahassee, Fla., Larry E. Temple, Austin, Tex., Ronnie J. Everitt, Panama City, Fla., Robert B. Reynolds, Houston, Tex., for appellants.
 Edward L. Stahley, Asst. U.S. Atty., Tallahassee, Fla., C.W.Eggart, jr., Acting U.S.Atty., Pensacola, Fla., for the United States.
 Before JONES, WISDOM and GEWIN, Circuit Judges.
 WISDOM, Circuit Judge.
 
 
 1
 These four cases arise out of a series of 'automobile accidents' in Georgia during 1955 and 1956 which the appellants in these proceedings allegedly staged for the purpose of defrauding certain insurance companies. The appellants were indicted in the United States District Court for the Northern District of Florida February 7, 1958, for violation of the federal Mail Fraud Statute, 18 U.S.C.A. 1341. In the first, second, and fourth cases this is the second appeal. The defendants obtained a reversal of their first convictions, but on retrial they were convicted again. Belvin et al. v. United States, 5 Cir., 1960, 273 F.2d 583; Everitt v. United States (Thompson v. United States, and Glenn v. United States), 5 Cir., 1960, 281 F.2d 429. In the third case this is the first appeal. We affirm the convictions.
 
 GLENN and BELVIN v. UNITED STATES
 Joint First Argument: Defective Indictment
 
 2
 Glenn and Belvin, in this case, and all of the defendants in the other cases, argue that there is a fatal defect in the indictments on which their cases were submitted for trial before the petit jury. Section 1341 provides, in part, as follows: 'Whoever, having devised or intending to devise any scheme or artifice to defraud * * * places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or Knowingly causes to be delivered by mail * * * any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both.' The indictments against these defendants charged that they formed a scheme to defraud and that 'for the purpose of executing the aforesaid scheme and artifice and attempting to do so caused to be delivered by the post office' the letters in question. The defendants argue that the indictments do not include all the ingredients of the offense since they fail to charge the defendants with knowingly causing use of the mails.
 
 
 3
 Sufficiency of an indictment is not to be lightly dismissed as a mere formality or technical nicety. History and constitutional enactment have impressed it with a special importance. 'The formality, certainty, and verbal precision required in an indictment has always been one of the most salient characteristics of English criminal procedure.' 3 Holdsworth, History of English Law (3d ed. 1926) 616. See also Ex parte Wilson, 1885, 114 U.S. 417, 5 S.Ct. 935, 29 L.Ed. 89. The Fifth Amendment states that 'No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *.' This constitutional provision and Rule 7 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., must be read as intending that the indictment shall cover all essential elements in the offense. See United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92.
 
 
 4
 In this case the defendants are correct in asserting that their indictments were required to cover the element of knowledge that their actions would cause a use of the mails, since if the only use of the mails caused by their fraudulent conduct had been unanticipated and incidental, they would not have violated the mail fraud statute. In interpreting Section 1341, courts have established the rule that for a scheme to come within the reach of that provision it must have 'reasonably contemplated' a use of the mails. Compare Steiner v. United States, 5 Cir., 1943, 134 F.2d 931, cert. denied, 319 U.S, 774, 63 S.Ct. 1439, 87 L.Ed. 1721 and Hart v. United States, 5 Cir., 1940, 112 F.2d 128, cert. denied, 311 U.S. 684, 61 S.Ct. 60, 85 L.Ed. 441 with Getchell v. United States, 5 Cir., 1960, 282 F.2d 681. See also Pereira v. United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435.[1]
 
 
 5
 The appellants' argument falters on their assertion that their indictments did not cover the essential element of 'knowingly' causing a use of the mails. A defendant has no right to have his indictment phrased in the exact language of the statute; any language is sufficient so long as it plainly describes each element of the offense. United States v. Behrman, 1922, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619; Kreuter v. United States, 5 Cir., 1955,218 F.2d 532, cert. denied, 349 U.S. 932, 75 S.Ct. 777, 99 L.Ed. 1262. The flaw asserted in this case is that the indictment does not use the word, 'knowingly.' But the element established by 'knowingly' is satisfactorily described by the phrase, 'for the purpose of executing the aforesaid scheme and attempting to do so.' A person may unintentionally cause an event to occur, but it is impossible for a person to cause an event for a specific purpose without knowledge of what he is doing. This indictment did not charge the defendants simply with forming a scheme and causing the use of the mails; it charged them with forming a scheme and, for the purpose of accomplishing the scheme, causing a use of the mails. The additional phrase unmistakably indicates that the use of the mails was caused knowingly, and any layman on the grand jury must have realized this. The indictments were sufficient.
 
 
 6
 Belvin's Second Argument: Improper Restriction of Cross-Examination
 
 
 7
 The appellant Belvin argues that the trial judge improperly restricted his rights of cross-examination. The prosecution's primary witness was Harold W. Snow, an accomplice in the fraudulent accidents, who described to the jury the scheme and its execution. For purposes of impeachment, appellant's counsel questioned Snow about discrepancies between his testimony and statements he made shortly after the accident. A letter that Snow wrote to a United States Attorney May 30, 1959, contained statements in direct contradiction to portions of Snow's trial testimony. Snow admitted frankly that he had made the earlier inconsistent statements. Belvin's attorney then sought to read selected sentences from the letter to the jury. The trial judge stated that he would allow the attorney to introduce the letter in its entirety but that it was not permissible to read excerpts. The appellant chose not to introduce the letter, presumably because of its other contents.
 
 
 8
 We cannot agree that the defendant's right to impeach adverse witnesses was improperly restricted. No prejudice has been shown. The defendant brought out the substance of the earlier statements and the fact that they contradicted the witness's trial testimony, and he was allowed to introduce the letter. Reading selected sentences from the letter might have heightened their impact but would not have brought any additional information to the attention of the jury. Since the statements had been admitted already, there was no need to prove them. In denying permission to read excerpts from the letter, the trial judge properly guarded against the possibility that sentences read out of context may be misleading.
 
 
 9
 Belvin's Third Argument: Insufficiency of the Evidence
 
 
 10
 Belvin argues that the evidence was insufficient to support his conviction. There is not a shadow of substance to this argument. First, Belvin asserts that the evidence does not show whether the victim, the Iowa Mutual Insurance Company, is an individual, a partnership, or a corporation. This argument was disposed of with full and adequate reasons the first time this case was here on appeal. Belvin v. United States, 5 Cir., 1960, 273 F.2d 583, 584. Second, Belvin says that there is no evidence to tie him in to the fraudulent scheme. We have carefully considered the evidence pertinent to this assertion. We find the contention without merit.
 
 
 11
 Glenn's Second Argument: Failure to Return Indictment Into Open Court
 
 
 12
 Glenn (and the other defendants) contends that his conviction was defective since the record fails to show that the indictment was returned into open court. Rule 6(f) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides that 'the indictment shall be returned by the grand jury to a judge in open court.' See Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 68 L.Ed. 680; Breese v. United States, 1912, 226 U.S. 1, 33 S.Ct. 1, 57 L.Ed. 97; Renigar v. United States, 4 Cir., 1909, 172 F. 646, 26 L.R.A., N.S., 683; Orfield, The Federal Grand Jury, 22 F.R.D. 343, 373-375 (1959). The appellant's point was arguable when made. It has been undercut, however, by a subsequent amendment of the record making clear that the indictment was returned into open court.
 
 
 13
 On motion by the appellee, this Court ordered correction of the record by the inclusion of certified copies of pages 17 and 18 of the Criminal Minute Book F, for January 28, 1958, to September 22, 1960, of the United States District Court for the Northern District of Florida. Such a correction is authorized by Rule 39(b)(1), F.R.Cr.P., and Rule 75(h), F.R.Civ.P., 28 U.S.C.A. The supplemental pages declare that at a stated term of the District Court before Judge DeVane 'the Grand Jury, heretofore duly impaneled and sworn of February 5, 1958, to inquire in and for the body of the Northern District of Florida, came into court and presented the following indictments, each endorsed 'A True Bill, Rainey Cawthon, Foreman: * * * Cr. No. 1341-- U.S. v. Wallace H. Hawkins, Dock Perry Glenn, William M. Belvin and Alfis O'Neal Thompson, Jr.-- Viol.: Use of Mails to Defraud (18 USC 1341) in two counts."[2] No objection has been raised as to the accuracy of this record.
 
 Glenn's Third Argument: Lack of Counsel
 
 14
 Glenn complains that he was deprived of his rights under the Sixth Amendment to the United States Constitution to the assistance of counsel at the trial by which he was convicted. Johnson v. Zerbst, 1937, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. The government's failure to provide Glenn with counsel when he was unable to hire counsel himself was the reason for the reversal of Glenn's first conviction. Everitt v. United States, 5 Cir., 1960, 281 F.2d 429, 437-38. With this holding well in mind, the district court on December 5, 1960, appointed two attorneys to assist Glenn at the retrial January 17, 1961. The attorneys undertook to prepare Glenn's defense and filed certain motions in his behalf. From the first Glenn refused to cooperate. He quarrelled with his lawyers on the handling of his defense, criticized the lawyers for the other defendants, and filed several motions on his own. January 2 he moved that the appointment of the attorneys be 'ignored' and that he be allowed to argue his motions to the court January 5 and 6. January 6 the attorneys requested that they be discharged from their duties as appointed counsel. They stated that Glenn refused to consult with them, had not told them about his motions, and that he had sent inflammatory, derogatory letters to their families. After an extended colloquy, the trial judge said to Glenn: 'You have made it clear that you do not desire to have counsel and you are going to be allowed, according to your request, to try your case without counsel.' Glenn voiced no objection to the discharge of the attorneys although he had ample opportunity to do so. Three days later, for purposes of delay, the Government suggests, he moved to have the court appoint new counsel for him. The trial judge denied his motion. At the trial he conducted his own defense.
 
 
 15
 This Court has zealously protected a defendant's right to competent counsel. See MacKenna v. Ellis, 5 Cir., 1960, 280 F.,2d 592. But there are limits. A defendant 'may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open.' Adams v. United States, 1943, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268. The evidence in this case is unequivocal. With his eyes open, the defendant rejected appointed counsel. There is no suggestion that the appointed attorneys were not competent or for any other reason were unqualified. The defendant simply chose to run his own show. The records before un on this appeal and on the previous appeal show that Glenn was determined to take charge of his defense, with and without a lawyer. In the circumstances of this case, we think that the defendant has no just reason to complain of lack of counsel. Brown v. United States, 1959, 105 U.S.App.D.C. 77, 264 F.2d 363, 366-367, cert. denied 360 U.S. 911, 79 S.Ct. 1299, 3 L.Ed.2d 1262; Swope v. McDonald, 9 Cir., 1949, 173 F.2d 852, cert. denied 337 U.S. 960, 69 S.Ct. 1522, 93 L.Ed. 1759; United States v. Gutterman, 2 Cir., 1945, 147 F.2d 540, 542, 157 A.L.R. 1221; United States ex rel. Mitchell v. Thompson, S.D.N.Y., 1944, 56 F.Supp. 683, 689, aff'd U.S. v. Mitchell, 2 Cir., 1943, 137 F.2d 1006, affirmance upheld on rehearing 2 Cir., 138 F.2d 831, cert. denied 321 U.S. 794, 64 S.Ct. 785, 88 L.Ed. 1083. By his rejection of the appointed counsel and his action in taking over his own defense, Glenn waived his right to the assistance of counsel, and his trial proceeded without infringement of his constitutional rights. We note that, on appeal, this Court appointed a new attorney who submitted an able brief and argued the case vigorously in the best tradition of the Bar.
 
 
 16
 Glenn's Fourth Argument: Improper denial of Motion for Acquittal
 
 
 17
 At the conclusion of the trial Glenn moved for an acquittal, which was denied. On appeal Glenn argues that the denial was improper, since the prosecution failed to prove that the mails were used, that he caused the mails to be used, or that use of the mails was an essential part of the scheme. After a careful examination of the record we have concluded that the evidence introduced by the Government was sufficient to prove each element of the offense, and that Glenn's motion for acquittal was properly denied. The evidence in this case shows that the mails were used to obtain approval of the defendant's applications for insurance payments and to send checks from the insurance companies' main offices in Iowa to local agents in Florida who transmitted the checks to the defendants. Such use of the mails by adjusters, local agents, and insurance companies as part of the usual business practice in settling and paying claims was reasonably foreseeable by the defendants and was an essential step in the process by which they obtained the fruits of their plot. United States v. Kenofskey, 1917, 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836; Pereira v; United States, 1954, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435. See Parr v. United States, 1960, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277.
 
 
 18
 The judgments of conviction in this case are affirmed.
 
 EVERITT v. UNITED STATES
 
 19
 This appeal is based on the same points asserted by Dock Perry Glenn in the first case, with the single distinguishing factor that the circumstances bearing on Everitt's contention that he was denied the right to counsel are somewhat different. Everitt argues that his indictment was defective since it did not use the word 'knowingly', that the record does not show that the indictment was returned into open court, that the evidence does not show a use of the mails within the meaning of Section 1341. For the reasons given in our discussion of these points before, we reject these contentions; Intertwined with Everitt's argument on the denial of his right to counsel in this case is his similar argument in the third case, Everitt and Hawkins v. United States. For clarity and convenience Everitt's contentions in both cases will be discussed together.
 
 
 20
 At the hearing December 5, 1960, the district court appointed attorneys to act as counsel for each defendant in these cases. One of them, Mr. Urquhart, had handled Everitt's defense at his first trial. Each attorney began preparation for the trials and filed motions with regard to it. Each had difficulty in working with his client. Everitt expressed his lack of confidence in the attorneys and argued with his attorneys over the way he proposed to handle the defense. He filed certain motions on his own account. One motion stated, 'Mr. M. A. Urquhart has proven for the past 19 months that he is not a competent defense attorney or that he is a traitor.' At the hearing on the motions both Mr. Urquhart and Everitt's other attorney, Mr. Spear, asked to be relieved of their assignment. Mr. Spear stated that Everitt had sent him letters 'in which he in effect states that he wants me to defend him instead of going along with a railroad job,' and that his wife had also received such letters. When examined by the trial judge on these matters, Everitt withdrew his accusations, was allowed to remove his motion from the court files, and stated that he was satisfied to have those attorneys represent him. The district judge then asked the lawyers whether they still wished to be relieved, stating that he would not force the assignment upon them in view of Everitt's conduct. Both attorneys accepted the opportunity to withdraw.
 
 
 21
 The withdrawal of Everitt's counsel occurred Friday, January 6. One of his trials was scheduled for Monday, January 9 and the other for Thursday, January 12. Everitt immediately asked for new counsel. The prosecuting attorney stated that, out of caution, he would recommend in Everitt's case that new counsel be appointed unless Everitt was financially able to hire counsel himself. After Everitt admitted being employed for $110 a week, the district judge declared that Everitt was not entitled to appointed counsel. When Everitt appeared for trial on Monday he said that he had been unable to obtain private counsel and asked for a continuance. He stated that he had made two unsuccessful efforts Saturday to locate a lawyer who had handled legal matters for him before. After discussion, the trial judge stated that he would postpone the trial for a week, if Everitt would agree to begin trial in the Thursday case on schedule whether or not he had obtained private counsel. The trial judge offered to allow Everitt to have Glenn sit with him at the table during the trial to assist him; from the records, it is evident that Glenn dominated the defendants, and that they regarded him as a better legal advisor than any of their lawyers; Everitt agreed. The trials took place as scheduled, and Everitt handled his own defense.
 
 
 22
 Weighing the facts, we have concluded that Everitt's right to counsel at these two trials was not violated. We affirm the ruling of the trial judge that as a matter of financial standing Everitt was not entitled to appointed counsel. Under Johnson v. Zerbst, 1937, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 counsel must be provided for defendants who cannot provide for their own defense, but this duty is generally limited to the indigent and needy. The public is not obliged to provide free legal help for a defendant who is earning sufficient income to provide his own. Whether a person is financially unable to hire his own lawyer is a factual question that lies primarily in the province of the district court. In this case the fact that the defendant had steady work with an income of $110 a week, or over $5,700 a year, strongly supports the district judge's finding of a lack of financial inability, and there seem to be no important extenuating circumstances. United States v. Sampson, D.C.D.C., 1958, 161 F.Supp. 216.
 
 
 23
 The main thrust of the defendant's argument is that the court's failure to order a longer continuance deprived him of an opportunity to obtain counsel. Everitt relies heavily on Tinkle v. United States, 8 Cir., 1958,254 F.2d 23, where a conviction was overturned because the defendant was not allowed sufficient time to find an attorney. In that case the defendant fendant and his wife had planned to use the same attorney until two days before the trial, when they discovered a conflict of interest between the defendant and his wife. Though excusable reasons existed why the defendant had not discovered the conflict earlier, the court did not allow the defendant additional time to find a lawyer. The defendant was obviously handicapped in the trial by the absence of counsel, and he was sentenced to twenty years imprisonment on being found guilty. Several factors distinguish this case from Tinkle. Unlike Tinkle Everitt bears the blame for the loss of his original attorneys. The district court did not find that Everitt's conduct created a waiver of his right to counsel, but it was entitled to take that conduct into account in its treatment of Everitt's request for a special continuance to allow him time to find new counsel. A defendant cannot expect to be obstructive himself and then rely on his obstructionist tactics as a reason for the court's action. See Spevak v. United States, 4 Cir., 1946,158 F.2d 594. It is also significant that in this case no serious prejudice has been shown. The court allowed Everitt an extra week to find counsel to assist him in the first case, making a total of ten days between the time when Everitt learned that his original counsel were withdrawing and the start of that trial. His failure to find counsel during that period suggests that if he tried at all he did not try very hard. Everitt was not a person of low mentality or ignorant of the ways of the law. In discussion with Everitt January 9 the district court stated: 'In your argument to the court you indicated that you have made a lot of study of law. You refer to legal principles and you refer to decisions. Possibly you are able to represent yourself, and if I did decide to go on with this trial this morning, in view of your motion, I believe that I would be justified in doing so.' Everitt was allowed the assistance of Glenn, a fellow defendant apparently even more familiar with legal patter than he. He agreed to go forward with the trial on the revised schedule; the record does not reveal instances where his case was hurt through mishandling.
 
 
 24
 Considering the reocrd as a whole, we feel that the trial judge did not abuse his discretion in refusing to allow further continuances in the prosecutions against Everitt.
 
 
 25
 The conviction is affirmed.
 
 EVERITT and HAWKINS v. UNITED STATES
 
 26
 Everitt's arguments are exactly the same as those made by him in the preceding case, Everitt v. United States. For the reasons given in our decision in that case, we reject his appeal here and affirme the conviction.
 
 
 27
 Hawkins's appeal is based principally on his argument that the indictment against him was fatally defective since it did not use the word 'knowingly.' For the reasons given in our discussion of this argument in the first case, it must be rejected. Hawkins also asserts that his trial and conviction almost three years after the indictment violated his right under the Sixth Amendment to a speedy trial. The weakness in this contention is that Hawkins fails to show that he was in any way prejudiced by the delay or that he made any effort to obtain an earlier trail. Although a more prompt disposition of his case would have been desirable, his eventual conviction is not vitiated by the delay, in the absence of a showing of prejudice. Pollard v. United States, 1957, 352 U.S. 354, 77 S.Ct. 481, 1 L.Ed.2d 393; United States v. Holmes, 3 Cir., 1948, 168 F.2d 888.
 
 
 28
 The appellant also asserts that the trial court committed prejudicial error in permitting certain testimony and exhibits to be introduced into evidence. We have examined these contentions and find them to be without merit.
 
 
 29
 Finally, Hawkins asserts that the evidence was insufficient to support the conviction since it fails to show whether the victim of the scheme was a corporation, partnership, or individual. This point is inconsequential. See Belvin v. United States, 5 Cir., 1960, 273 F.2d 583.
 
 
 30
 The convictions are affirmed.
 
 HAWKINS v. UNITED STATES
 
 31
 This case does not present any serious questions. Hawkins again relies heavily on the argument that the indictment was defective for failure to use the word 'knowingly.' For the reasons given in Belvin and Glenn v. United States, this argument must be rejected. Hawkins also advances several contentions that the trial court erred in certain rulings admitting evidence, excluding evidence, and denying the defendant's motion for acquittal. We have examined these contentions and find them to be without merit.
 
 
 32
 The conviction is affirmed.
 
 
 33
 Because of our earlier decision on these cases and because of the Court's concern over the appellants' contentions with respect to their not having the benefit of competent trial attorneys the Court has made an exceptionally close study of the records in these cases. We find that the trial judge, in his rulings and instructions to the jury, leaned over in order to be fair to the defendants. We hold that each case was conducted in full accord with the law. We have considered all contentions whether discussed or not discussed in this opinion. The convictions are affirmed.
 
 
 
 [1]
 In Pereira the Court stated: 'The elements of the offense of mail fraud under 18 U;S.C; (Supp V) 1341 are (1) a scheme to defraud, and (2) the mailing of a letter, etc,, for the purpose of executing the scheme. It is not necessary that the scheme contemplate the use of the mails as an essential element. * * * Here, the scheme to defraud is established, and the mailing of the check by the bank, incident to an essential part of the scheme, is established. There remains only the question whether Pereira 'caused' the mailing. That question is easily answeredk Where one does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used,' 347 U.S. at 8-9, 74 S.Ct; at 362-263
 
 
 [2]
 Among the other indictments which these additional pages indicate were returned into open court are the following: 'Cr; No; 1342-- U.S. v; Ronnie J,Everitt and William Dallas Stevens-- Viol.: Use of Mails to Defraud (18 USC 1341) in one count. P Cr. No. 1343-- U;S. v. Ronnie J. Everitt and Clifton L. Hawkins-- Viol.: Use of Mails to Defraud (18 USC 1341) in two counts.' These corrections are dispositive of Everitt's arguments in the second and third cases that his indictments were also defective since the record did not show that they were introduced into open court