**Glenn T. GURLEY, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 9241.**

District of Columbia Court of Appeals.

Submitted Nov. 18, 1975.

Decided Feb. 27, 1976.

---

John F. Mercer, Washington, D.C., for appellant.

Earl J. Silbert, U. S. Atty., with whom John A. Terry, James F. McMullin, Edward C. McGuire, Frederick A. Douglas, Andrea L. Harnett and Michael H. Gertner, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN, YEAGLEY and MACK, Associate Judges.

PER CURIAM:

Appellant was convicted of carrying a pistol without a license after trial by the court sitting without a jury.[1] He was *not* represented by counsel at his trial and the record contains no express waiver in writing or orally by him of this right. Rather, he stated in open court before the witnesses began to testify, "I realized that a defense of myself would be an inadequate defense." However, the trial court commented "[s]ince . . . the court that has to do with the assignment of cases . . . has

certified it out to me, the only thing I can do is to go to trial with it." This trial, at which appellant was not represented by counsel resulted ultimately in his sentence to imprisonment after his conviction.[2]

■ The government argues that appellant's "predicament was of his own creation" and "his obdurate failure to seek alternative counsel does amount to a waiver of his right to counsel." This argument rests upon the proposition that a defendant by his negligent conduct or dilatory tactics may effectively waive his right to legal representation. *Glenn v. United States,* 303 F.2d 536 (5th Cir. 1962); *United States v. Arlen,* 252 F.2d 491 (2d Cir. 1958); *see Adams v. United States,* 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *Cleveland v. United States,* 116 U.S.App.D.C. 188, 322 F.2d 401, *cert. denied,* 375 U.S. 884, 84 S.Ct. 157, 11 L.Ed.2d 114 (1963); *United States v. Birrell,* 286 F.Supp. 885 (S.D.N.Y.1968).[3]

We therefore turn to the record to ascertain whether appellant's conduct was such as to amount to a waiver of his right to counsel at his trial. The record reflects that in June 1974, appellant appeared at his arraignment and was represented by retained counsel who requested July 18 for the trial date. On June 28 appellant's motion to suppress certain evidence was heard, testimony was taken with his counsel participating, and the court entered an order of denial that same day. On July 16, the trial date was continued to August 19 at the request of appellant's counsel, because of a conflict with another case. On that last date appellant appeared in open court and the following colloquy occurred:

MR. GURLEY: Yes, Your Honor, I'd like to get a continuance in this matter.

THE COURT: Yes, What for?

---

1. There was evidence that a pistol was in an ice cream truck driven by appellant who asserted that he had been harassed by children as he peddled his wares.

2. The sentence was ten consecutive weekends in jail as well as a fine.

3. In order to find that there has been a waiver of a constitutional right such as the right to counsel, the government has the burden of showing that the defendant acted knowingly and intelligently. *See Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

MR. GURLEY: I have breached a contract with my attorney due to inability to pay her. However, I started a job this morning and I'd like a continuance for about 30 days.

THE COURT: That will be granted. . . . Is [this attorney] going to represent you, sir?

MR. GURLEY: Yes.

On September 23, appellant appeared and requested a continuance, stating, "I've been recently employed. I've not been able to obtain, acquire funds for my attorney. And I'd like a continuance for about 30 days . . . . "

The court passed over the matter until appellant's attorney of record could be located. When she appeared she advised the court:

Unfortunately I don't have my file and from my memory I'll give the Court a history of my representation as I recall it. . . . He wrote a bad check. He has not attempted to make the check good. I wrote Mr. Gurely [sic] a letter, of which I have a file copy, in which I told him I would not, because of the bad check, be able to continue my representations in this matter. That check was written, I believe, between early and mid part of August. *Not only was the letter written but we had an oral· communication over the telephone* and if I'm not mistaken, I either called him locally or long distance. *I've had two conversations about my representations with him on the telephone* and I followed it up with a letter in one instance. And I made it very clear that I would not be able to represent him since he had not

been able to make any payments on his retainer fee, Your Honor. . . . [Emphasis supplied.]

The court then demanded of appellant why he had not sought other counsel but unfortunately, appellant's answer to the court is unintelligible on the record before us.[4] However, the record does contain his representation to the trial court later on the same day, after the assignment court certified the case out for trial, in which appellant conceded he had received a letter from his attorney but explained that "there had been two subsequent telephone conversations [between his attorney and him] and, at that point, I was left with the understanding that if I was able to live up to the terms of our retainer agreement that, at that point in time, that she would further represent me"[5]

We consider the following factors to be of particular significance in our decision: (1) appellant had been granted only one 30-day continuance from August 19 to September 23, (2) on September 23 appellant's attorney was still his counsel of record, (3) appellant's understanding on the 23rd was "that ·if I was able to live up to the terms of our retainer agreement . . . she would further represent me," (4) the record does not reflect that appellant was ever warned after obtaining his continuance on August 19 of the possible consequence if he did not retain an attorney, *viz.,* being forced to go to trial without counsel, and (5) the government made no showing that appellant acted in bad faith or had some improper motive in requesting a second continuance, which might have allowed an inference that appellant knew his rights and consciously manipulated them for improper purposes.

4. The transcript reads: "Because I—(indiscernible) I should raise the full amount—(indiscernible) That was my impression, whether that is the opinion at this time, I don't know."

, 5. Appellant's attorney had a different recollection of their telephone conversations. She said: "And I told Mr. Gurley over the telephone that I didn't want him to give me money and that I would not represent him and I did not want part payment, or full payment or anything from him, that the attorney-client relationship was severed completely because of false representations made to me in my office and his ability [sic] to pay and the writing of a bad check."

While the actions of appellant may fairly be characterized as imprudent, the record before us, containing as it does an imperfect recordation of the response to a crucial question, reflects only that they stemmed from a misunderstanding with his attorney. The fact that appellant's attorney was still counsel of record, however, makes such a misunderstanding more reasonable. Furthermore, we are led to conclude, as did the Fifth Circuit Court of Appeals in *McConnell v. United States,* 375 F.2d 905, 910–11 (5th Cir. 1967), that:

> The record fails to disclose that the appellant acted in bad faith or that he was willfully seeking to mislead the court with reference to his desire or ability to retain counsel of his own choice. . . . The record before us is barren

of any evidence that the appellant was seeking to postpone the trial by the device of requesting appointed counsel or that he desired to defend himself.

■ The lack of any indication of bad faith on appellant's part distinguishes this situation from cases such as *Glenn v. United States, supra,* and *United States v. Arlen, supra.* Defendant's conduct here, in requesting a second continuance after having been granted one continuance, was not of the egregious, recurring sort that led to a finding of knowledge of rights and subsequent waiver in those cases.[6] Accordingly, we conclude that appellant must be accorded a new trial at which he may be represented by counsel.

*So Ordered.*

6. In *Glenn v. United States, supra,* appellant consistently refused to cooperate with his appointed counsel, quarrelled with his lawyers on the handling of the case, made his own motions, and requested that he be allowed to argue his own motions. When the court discharged appellant's attorneys, appellant did not object. His motion to have new counsel appointed three days later was denied on the ground of waiver, and this ruling was affirmed on appeal. 303 F.2d at 537–38. In *United States v. Arlen, supra,* appellant was financially able to retain counsel, but his first attorney withdrew from the case approximately six weeks before trial when appellant failed to pay the balance of his fee. Appellant did not obtain a new attorney during this time, nor did he pay his original attorney the remainder of his fee, despite the trial court's instructions that he must retain counsel before trial. Instead, appellant continually tried to delay the trial by entering the hospital and seeking continuances. The trial court was aware that the key government witness was 77 years old and that appellant's dilatory tactics were jeopardizing the case against him. The court's refusal to grant a continuance in order for appellant to retain counsel was affirmed on appeal. 252 F.2d at 493–94.