UNITED STATES of America

v.

David Lee WILLIAMS, Defendant.

No. 75 Cr. 992–LFM.

United States District Court,
S. D. New York.

March 18, 1976.

Anderson Russell Kill & Olick, P.C.,
New York City by John H. Doyle, III,
New York City, for defendant.

Thomas J. Cahill, U. S. Atty. for the
Southern District of New York, New
York City by Allen R. Bentley, Ira H.
Block, Asst. U. S. Attys., for United
States of America.

## OPINION

MacMAHON, District Judge.

Defendant moves under Rule 12(b),
Fed.R.Crim.P., to dismiss the indictment
on the ground that a trial would violate
his constitutional right not to be put in
jeopardy twice for the same offense.

Defendant contends that, since a mis-
trial was declared sua sponte by the
court during the opening statement of
his attorney, he cannot be tried again
without being deprived of his right to
have his guilt or innocence determined
by the first jury. The government con-
tends that, since the mistrial was de-
clared by the court for the benefit of
defendant, the double jeopardy clause
does not bar reprosecution.

The Fifth Amendment to the constitu-
tion prohibits the government from put-
ting any person in jeopardy twice for the
same offense. Its purpose is to prevent

the state, with all of its supposed resources and power, from making successive attempts to convict an individual, repeatedly subjecting him to the expense and ordeal of trial, and increasing the possibility that, even though innocent, he will be found guilty.[1] The state may, however, retry a defendant when the court is required to discharge the jury in the first proceeding because of manifest necessity or the ends of justice.[2] The circumstances under which such action is appropriate is left to the sound discretion of the trial judge. Defendant's motion, therefore, must be denied if we were obliged to abort the first trial in the interest of justice.

In *Gori v. United States*,[3] the trial court declared a mistrial on its own motion when the government asked questions of its witness which might have disclosed other crimes committed by the accused. The Court of Appeals characterized the prosecutor's conduct as unexceptional and the declaration of the mistrial as premature; nevertheless, the action of the trial judge to protect the rights of the accused was sustained.[4] The Supreme Court affirmed:

> "Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." [5]

*United States v. Jorn* [6] affirmed the dismissal of an information on double jeopardy grounds after the trial judge, sua sponte, declared a mistrial when it appeared that government witnesses had not been properly warned of their rights. The trial was terminated to enable the witnesses to consult with attorneys. This action, termed erratic by the Supreme Court,[7] was found not to be compelled by any manifest necessity or public justice. Moreover, the lack of preparedness by the government, which precipitated the mistrial, directly invoked the policies underlying the double jeopardy clause and the guaranty of a speedy trial.[8]

Familiarity with the background procedural setting in this case is essential to an understanding of the reasons for declaring a mistrial. The complaint was filed on August 8, 1975 and defendant forthwith arraigned before a magistrate, who assigned counsel to represent defendant. An eight-count indictment was filed on October 16, 1975, charging defendant with conspiracy and making false applications for bank loans, in violation of Title 18, United States Code, Sections 371 and 1014; defendant pleaded not guilty; the case was assigned to us and a pretrial conference was called the same day.

All appeared for the pretrial conference, and defense counsel advised that defendant had a psychiatric history, that he would be examined by a psychiatrist and a psychologist, and that defense counsel would probably raise the issue of defendant's mental competency to stand trial, as well as his mental competency to commit the alleged crimes. The government sought an examination of the defendant by a qualified psychiatrist

---

1. *United States v. Dinitz*, —— U.S. ——, 96 S.Ct. 1075, 47 L.Ed.2d 267, 44 U.S.L.W. 4309 (1976); *Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957).

2. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824).

3. 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961).

4. *United States v. Gori*, 282 F.2d 43, 46 (2d Cir. 1960) (En Banc).

5. *Gori v. United States, supra*, 367 U.S. at 368, 81 S.Ct. at 1526, 6 L.Ed.2d at 904.

6. 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

7. *Illinois v. Somerville*, 410 U.S. 458, 469, 93 S.Ct. 1066, 1073, 35 L.Ed.2d 425, 433 (1973).

8. *United States v. Jorn, supra*, 400 U.S. at 486, 91 S.Ct. at 557, 27 L.Ed.2d at 557.

and later we signed a formal order submitted by the government. We set a competency hearing for November 24, 1975, to be followed by a trial immediately thereafter should defendant be found competent to stand trial.

The government's psychiatrist examined defendant and reported that he was competent to stand trial. Accordingly, a hearing was held on November 24 to determine that issue.

It appeared upon the hearing that neither the defense witness nor defense counsel was aware of what facts were material to the issue of competency to stand trial.[9] Specifically, defense counsel did not seem to know what questions to ask, nor how to ask them, and the witness, manifestly without legal guidance, was almost totally unprepared to testify. As a result, we were compelled to take over the examination, both of defense witnesses on direct[10] and the government's psychiatrist on cross.[11]

Upon completion of the hearing, we found defendant competent to stand trial, a jury was selected, and the trial began. During the first few minutes of defense counsel's opening statement, we were obliged to interrupt and warn him three times not to instruct the jury on the law.[12] Nevertheless, he failed to heed our advice, and, by the fourth time, we were left with no choice but to conclude that counsel was either unwilling or unable to make a distinction between questions of law and issues of fact.

The charges against this defendant are that he knowingly made false statements of material fact in loan applications for the purpose of influencing the action of the bank and of conspiring to do so.

The charges are not only serious but also raise close issues of knowledge, scienter and criminal intent, all turning on fine distinctions between truth or falsity, guilty knowledge or innocent mistake, etc. Such issues are difficult enough, even when uncomplicated by an insanity defense. When such a defense is interposed on non-frivolous grounds, as was plainly the case here, it seems to us that the court has a special duty to protect the defendant from a miscarriage of justice.

Our assessment of counsel's ineptness and inability competently to represent his client, especially in light of the insanity defense, was not erratic, as in *Jorn*, but was based on a reasonable apprehension, fortified by long experience as a trial judge, that the accused would not be fairly represented. The constitution requires that a defendant in a criminal case be represented by counsel.[13] The Criminal Justice Act was passed to assure that an indigent defendant in a federal court receive experienced and adequate representation.[14] The Chief Justice has, however, warned of the disservice to the hapless client when the Act is used to provide on-the-job training for the amateur or inexperienced attorney.[15]

The federal courts have the duty to implement the policies embodied in the Criminal Justice Act, as well as to ensure the general fairness of a criminal proceeding. This duty extends beyond the standards required by the constitution[16] and must prevent even the possibility of unfairness.[17] A district judge, therefore, cannot always remain a passive bystander but may have to intervene to assure that the facts of each

---

9. Hearing transcript, p. 10.

10. Hearing transcript, pp. 7–9, 11–12.

11. Hearing transcript, pp. 25, 26, 29.

12. Trial transcript, pp. 1, 2.

13. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

14. 18 U.S.C. § 3006A; 1964 U.S.Code Cong. & Admin.News, p. 2990; 1970 U.S.Code Cong. & Admin.News, p. 3982.

15. "The Special Skills of Advocacy," delivered by Chief Justice Warren Burger at Fordham University School of Law, November 26, 1973.

16. *McNabb v. United States*, 318 U.S. 332, 340, 63 S.Ct. 608, 612, 87 L.Ed. 819, 823 (1943).

17. *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942, 946 (1955).

case are presented to the jury in a clear and straightforward manner.[18] He must be especially careful to avoid prejudice which may not be fully depicted in the record on appeal.[19]

In *United States v. Dinitz*,[20] the trial judge expelled defense counsel after he was unable or refused to confine his opening statement to the facts he expected to show at trial. The judge presented defendant with three alternatives: a delay pending appellate review of the propriety of the expulsion; continuation of the trial with another attorney; or declaration of a mistrial. Defendant moved for a mistrial and the motion was granted. Before his second trial, defendant made a motion to dismiss the indictment on double jeopardy grounds, alleging that he had been forced into the mistrial motion by the improper conduct of the first judge. The Supreme Court held that since the expulsion of defense counsel was not motivated by bad faith or a desire to harass or prejudice the defendant, and since the mistrial was declared on defendant's motion, the double jeopardy clause did not bar reprosecution. In his concurring opinion, however, the Chief Justice directed his attention to the propriety of the judge's conduct:

"[The trial judge has] plenary control of the conduct of counsel particularly in relation to addressing the jury.

An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole  . .  ..

A trial judge is under a duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop such professional misconduct."[21]

██ Our exclusion of defense counsel was compelled by the same duty to assure a clear presentation of the case to the jury and to safeguard the rights of the defendant. Once it became clear to us that the lawyer assigned by the magistrate to represent this indigent defendant[22] was too inexperienced, unprepared, and incompetent to present defendant's case to the jury, it became our plain duty to abort the trial.

A court cannot stand idly by while the poor are assigned lawyers too inexperienced or incompetent to be retained on a competitive basis in the open market. Equal justice becomes a mockery when the quality of representation upon a criminal trial depends solely upon the accused's ability to pay.[23] Although no court can assure that each defendant is represented by an equally skilled attorney, a court must intervene when the quality of representation falls below the level necessary to achieve some semblance of the adversary process so essential to focusing issues of fact for enlightened resolution by a jury.

██ This court's declaration of a mistrial does not bar retrial of the defendant. Substantial harm could result if, because of the double jeopardy clause, a court felt compelled to allow a trial to continue although the accused was not adequately represented. It would be inconceivable to require a trial judge to rely on the chance that a cold record will shock the conscience of an appellate

---

**18.** *United States v. McCord*, 166 U.S.App.D.C. 1, 509 F.2d 334, 347 (1974), *cert. denied*, 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975); *United States v. Nazzaro*, 472 F.2d 302, 313 (2d Cir. 1973); *United States v. Jacquillon*, 469 F.2d 380, 387 (5th Cir. 1972), *cert. denied*, 410 U.S. 938, 93 S.Ct. 1400, 35 L.Ed.2d 604 (1973).

**19.** *United States v. Gori, supra*, 282 F.2d 43.

**20.** —— U.S. ——, 96 S.Ct. 1075, 47 L.Ed.2d 267, 44 U.S.L.W. 4309.

**21.** —— U.S. at ——, 96 S.Ct. at 1082, 47 L.Ed.2d at 276, 44 U.S.L.W. at 4313.

**22.** After we declared the mistrial, we relieved the attorney appointed by the magistrate and assigned John H. Doyle, III, Esq., pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A, to represent defendant.

**23.** *Griffin v. Illinois*, 351 U.S. 12, 19, 76 S.Ct. 585, 590, 100 L.Ed. 891, 899 (1956).

court when an incipient miscarriage of justice is growing before his eyes.

Defendant contends that our failure to use a lesser sanction constitutes an abuse of discretion. It is sufficient, however, that the trial judge had reasonable grounds to believe that justice would not be served by continuing the trial, and it is immaterial that with flawless hindsight less drastic means may appear to have been sufficient to cure the defect.[24] Moreover, no feasible alternative was available.

█ Ineptness and incompetence cannot be magically transformed to skilled advocacy during the course of a single trial. Nor can the unfairness inevitably resulting from an inept defense be cured or overcome by an instruction to the jury. We are also mindful of the potential prejudice to a defendant when a judge is continually forced to take over the questioning of witnesses or to correct or admonish the defense attorney.

It was perfectly clear from our vantage point of long and extensive experience on the trial bench that the burden of imposing a second trial on the defendant was minimal compared to the prejudice to his defense and the incipient miscarriage of justice developing before our eyes.[25]

█ Defendant's suggestion of a continuance until new counsel could be appointed ignores the difficulty in finding substitute counsel, giving him sufficient time to prepare, and scheduling the resumption of trial amidst a congested calendar and at a time when the original jury and alternates could return. This court, given the problem presented and the exigencies of the situation, properly exercised its discretion in declaring a mistrial in order to protect the right of the defendant to competent representation.

Accordingly, defendant's motion to dismiss the indictment is denied in all respects.

So ordered.

---

**24.** *United States v. Gentile,* 525 F.2d 252, 258 (2d Cir. 1975); *United States ex rel. Stewart v. Hewitt,* 517 F.2d 993, 996 (3d Cir. 1975).

---

**25.** *United States v. Gentile, supra,* 525 F.2d at 256.