**UNITED STATES of America**

v.

**Reginald ROGERS, Stanley Harris, Brian May, Tony Miller, George W. Thomas and Michael Leon Raife, Defendants.**

No. 78 CR 443(S).

United States District Court,
E. D. New York.

May 7, 1979.

Edward R. Korman, U. S. Atty., E. D. N. Y. by Judith Pierce, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

Israel I. Davidson, Brooklyn, N. Y., for defendant Michael Raife.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

The government has moved, following declaration of a mistrial in this criminal action, for an order disqualifying Israel I. Davidson, Esq., from further appearing as attorney for Michael Raife, one of the two defendants on trial. The motion is opposed by Raife, who asserts his right, presumably under the sixth amendment, to be represented by counsel of his choice, as well as that of his attorney to practice before this court. Although the application appears to be without precedent in the published reports, the court is persuaded, after carefully reviewing controlling principles of law and the events which resulted in the abortive first trial of this action, that the defendant's right to competent counsel, the government's right to a fair opportunity to present its case, and the court's obligation to ensure the integrity of the judicial process require that the relief sought be granted.

## FACTUAL BACKGROUND

On August 3, 1978, a complaint was sworn out in this district charging "Michael Doe" and "Tony Doe" a/k/a "Tony Miller" with participation, along with four others, in the June 13 armed robbery of the Community National Bank branch at Fort Hamilton in Brooklyn. Arrest warrants thereafter issued and, on August 8, Michael Raife was brought before a United States Magistrate. At that time Raife completed a financial affidavit ("CJA 23") and the Magistrate appointed one Herbert Heitner, Esq., to represent him. On August 15 Raife was indicted with Miller and the four other defendants for conspiracy and the June 13 armed bank robbery. All six defendants were then arraigned before the Magistrate and pleaded not guilty. Heitner apparently represented Raife up to the time of arraignment; although no formal order of substitution was entered, he seemingly withdrew soon thereafter.

On August 23 the defendants and counsel appeared before the court for conference regarding motions, discovery matters and setting of a trial date.[1] Raife was then represented by Davidson, whom he had retained with the assistance of his family. Trial was set for November 6 and counsel were, in accordance with the usual practice of the court, advised of informal discovery procedures. While government counsel soon thereafter informed Davidson that she intended to introduce at trial certain statements allegedly made by Raife to FBI agents following his arrest, no motion to suppress was ever filed; in fact, it appears that the need for a suppression hearing was raised in the first instance by the prosecutor. Similarly, it was not until November 1, five days before trial was set to commence, that Davidson first sought a bill of particulars, and not until November 6 that he moved for a severance and a change of venue, although the latter application was based upon newspaper accounts of the robbery that had been published in September.

During the suppression hearing, which commenced on November 6 and continued on November 9, and jury selection on No-

---

1. Two related cases were conferenced at that time as well, *United States v. Brian May, et al.*, 78 CR 444, and *United States v. Brian May, et al.*, 78 CR 445. Raife was named as a defendant in the latter indictment as well.

vember 13, it became apparent that Davidson experienced serious hearing difficulty. Although he denies having any "hearing incapacity," Tr. (11/9/78), at 291, Davidson, who is nearly 84 years old, did ask to be permitted to sit closer to the bench and witness stand than the usual arrangement in the courtroom allowed. The request was honored to the extent feasible: the courtroom furniture was rearranged so that Davidson could place himself alongside counsel table no more than three to five feet from the stand (the usual position of government and defense were reversed), and the courtroom loudspeaker system was raised to maximum volume. (Miller's attorney, who complained that Davidson's constant requests for repetition of the voir dire examination were interfering with his obligations to his own client, was permitted to seat himself at the opposite end of the defense table. Tr. (11/9/78), at 297.)

Because this physical reordering of the courtroom was at best a makeshift response to Davidson's obvious hearing impairment, the court, at the government's request, inquired of Raife whether he was satisfied in going forward under the circumstances. The following response was elicited:

"Your honor, I have complete confidence in Mr. Davidson. And not only that, my family is unable to afford any other lawyer financially. And that is why my father is working two jobs now, because the bail that was taken to get me out of the retaining they had me in. So it broke my family practically. And now we are practically going to sell the car in order to finish paying the fee, which Mr. Davidson was kind enough to accept it for a small charge.

"THE COURT: I understand that. But you are aware of a possible problem, but you are consenting to go ahead?

"THE DEFENDANT RAIFE: Yes, sir.

"THE COURT: That's all I ask. You understand everything that is being done here to try to minimize the problem, but it may not be 100 percent successful. And you are aware of that?

"THE DEFENDANT RAIFE: Yes, sir." Tr. (11/9/78) at 295–96.

The trial in chief commenced on November 14 and continued through the following day. On the morning of November 16, the third day of trial, however, prior to the resumption of testimony, one member of the jury expressed to the courtroom clerk her doubts about Davidson's ability to represent his client, and asked for an opportunity to address the court. The matter was taken up with counsel, who agreed that I would discuss with the juror in chambers—outside their presence but on the record—the source of her concern, explain to her that a criminal defendant has the right, if within his means, to retain counsel of his choice, and that Raife had selected Davidson as his attorney, and then inquire whether she could render her verdict solely on the basis of the evidence produced during trial.

After the juror made plain to me that she could not do so, the minutes of her remarks were read to counsel, and further inquiry was made—this time in counsel's presence—to determine the contours of the judgment she had formed and whether she had discussed the situation with other members of the jury. Tr. (11/16/79), at 621–77. She then explained that her concern focused on Davidson's hearing problem, demeanor and courtroom behavior, and indicated that "the jurors are upset and he's [Davidson's] the center of all the talk in the [jury] room." Id. at 680. The defendant Miller then moved for a mistrial; when, after extended discussion, I expressed an inclination to grant the application, the government moved for a mistrial as to Raife as well. Decision on this last application was reserved pending an in camera voir dire of the remaining members of the jury. Because a significant number of jurors shared the first juror's opinion, a mistrial was declared, although over Davidson's strenuous objection. Id. at 776–79. When the court further indicated that a recusal would be appropriate under the circumstances, the government, noting that the "problem" would not in that way be cured or ameliorated, moved for an order disqualifying Davidson, who has been a member of

the Bar of this court for more than 50 years.

## DISCUSSION

■ Although a criminal defendant's sixth amendment right to the effective assistance of competent counsel is absolute, see *Argesinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932), his concomitant right to counsel of his choice, while entitled to great respect, is qualified, see *United States v. Poulack*, 556 F.2d 83, 86 (1 Cir.), *cert. denied*, 434 U.S. 986, 98 S.Ct. 613, 54 L.Ed.2d 480 (1977); *United States v. Vargas-Martinez*, 569 F.2d 1102, 1104 (9 Cir. 1978); *United States v. Dinitz*, 538 F.2d 1214, 1219 (*en banc*), reh'g denied, 542 F.2d 1174 (5 Cir. 1976), *cert. denied*, 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977); *United States v. Tortora*, 464 F.2d 1202, 1210 (2 Cir.), *cert. denied sub nom. Santoro v. United States*, 409 U.S. 1063, 93 S.Ct. 554, 34 L.Ed.2d 516 (1972); *United States v. Mardian*, 178 U.S.App.D.C. 207, 213, 546 F.2d 973, 979 & nn.8–9 (1976). *Compare Harling v. United States*, 387 A.2d 1101 (D.C.App. 1978) (court may not arbitrarily remove appointed counsel over objection of both defendant and attorney). Economic realities impose one obvious limitation on the defendant's "right" to be represented by a particular attorney; and the courts have recognized at least three other situations in which the defendant's choice must yield.

■ First, it is settled that the sixth amendment does not give a criminal defendant license to manipulate his choice of attorney "in order to delay or interfere with the orderly processes of justice." *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 754 n.6 (2 Cir. 1975). See *United States v. Arlen*, 252 F.2d 491, 494 (2 Cir. 1958). Thus, when chosen counsel is unable to comply with the court's trial schedule, the defendant's desire must be weighed against the "public need for the efficient ·and effective administration of criminal justice," *Carey v. Rundle*, 409 F.2d 1210, 1214 (3 Cir. 1969), *cert. denied*, 397 U.S. 946, 90 S.Ct. 964, 25 L.Ed.2d 127 (1970); and in appropriate circumstances the defendant may be required to go forward either with a different attorney or *pro se*, see *United States v. Poulack, supra*, 556 F.2d at 86; *United States v. Lespier*, 558 F.2d 624 (1 Cir. 1978); *United States v. Gates*, 557 F.2d 1086, 1088 (5 Cir. 1977); *United States ex rel. Martinez v. Thomas, supra*, 526 F.2d at 755; *United States v. Arlen, supra*; *United States v. Bragan*, 499 F.2d 1376 (4 Cir. 1974); *Lofton v. Procunier*, 487 F.2d 434 (9 Cir. 1973); *United States v. Casey*, 480 F.2d 151 (5 Cir.), *cert. denied*, 414 U.S. 1045, 94 S.Ct. 550, 38 L.Ed.2d 336 (1973).

■ Second, the courts in this circuit have uniformly held that criminal defendants "are not entitled to joint representation as a matter of right." *Abraham v. United States*, 549 F.2d 236, 239 (2 Cir. 1977). Because the sixth amendment guarantee necessarily includes the right to the undivided loyalty and assistance of counsel, and because the effectiveness of representation is undoubtedly implicated when an attorney either is called upon or undertakes to represent more than one defendant in a single trial, particularly if their interests are potentially divergent, see *Glasser v. United States*, 315 U.S. 60, 70–71, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. DeBerry*, 487 F.2d 448, 452 (2 Cir. 1973), the courts have not hesitated to disqualify counsel in the absence of a fully informed and unqualified waiver of such prejudice as might result. See *United States v. Bernstein*, 533 F.2d 775, 787–89 (2 Cir. 1976) (substitution may be required where waiver of conflict of interest was "not without strings"); see generally *United States v. Vargas-Martinez*, 569 F.2d 1102, 1104 (9 Cir. 1978); *Abraham v. United States, supra*, 549 F.2d at 239. Indeed, the trial judge has a duty, when joint representation is sought, to inquire into possible conflicts of interest and to apprise the defendants of the potential risks. *Glasser*,

*supra*, 315 U.S. at 71, 62 S.Ct. 457;· *Vargas-Martinez, supra*, 569 F.2d at 1104; *In re Taylor*, 567 F.2d 1183, 1191 (2 Cir. 1977); *United States v. Carrigan*, 543 F.2d 1053, 1055 (2 Cir. 1976); *United States v. Mari*, 526 F.2d 117, 119 (2 Cir. 1975); *Kaplan v. Bombard*, 573 F.2d 708 (2 Cir. 1978).

On the other hand, until recently the weight of authority in this circuit suggested that where representation in a criminal action produces a conflict of interest of the kind condemned by Canons 4 and 5 of the Code of Professional Responsibility,[2] the court can not, as it would in a civil proceeding, disqualify counsel or direct a substitution; rather, the defendant must be afforded an opportunity to elect between his right to representation by an attorney free from the competing claims of other clients (past or present) and his right to the attorney of his choice. *Compare United States v. Armedo-Sarmiento*, 524 F.2d 591 (2 Cir. 1975) (court may not disqualify counsel for criminal defendants without first affording them an opportunity to proceed with him and to waive claims based on conflict of interest arising from his prior representation of government witnesses who had refused to waive privilege as to confidential attorney-client communications), *and In re Taylor, supra*, 567 F.2d at 1191–92 (at least in cases implicating interests sought to be protected by Canon 5, the criminal defendant is entitled to counsel of his choice so long as he has "full knowledge of the potential adverse consequences of such representation"), *with Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225 (2 Cir. 1977) (civil action—counsel disqualified), *and Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562 (2 Cir. 1973) (same). Arguably, the April 23, 1979, decision of the Second Circuit in *United States v. Ostrer*, 597 F.2d 337, signals a departure from the sharp distinction drawn between criminal and civil actions. There, the court affirmed an order disqualifying criminal defense counsel because of a Canon 4 conflict. But the holding is probably limited to the facts of the case: representation of a criminal defendant by a former government attorney who, while acting as a prosecutor, was involved in the investigation of (and, in two instances, prosecuted) several witnesses against his client in the pending action.

■ *Ostrer* certainly does not, however, displace the settled rule that, when a defendant is unwilling to make or incapable of making a knowing and intelligent waiver of his right to the uninhibited assistance of counsel, the court has both the power and the obligation to resolve the clash of competing rights by requiring the retention of different counsel. See *Glasser v. United States, supra; Vargas-Martinez, supra*, 569 F.2d at 1104; *Kaplan v. Bombard, supra*, 573 F.2d at 716 (concurring opinion); *Abraham v. United States, supra*, 549 F.2d at 239. Moreover, although the cases require that a defendant be apprised of the effect of a conflict of interest on the soundness of the advice he may receive from counsel or on counsel's ability to perform his advocacy function, each appears to proceed on the assumption that counsel will in any event be able to perform within acceptable limits of competency. None suggest that this method of resolution is acceptable where counsel's effectiveness will be reduced or diminished below minimum standards. *Cf. United States v. Alvarez*, 580 F.2d 1251 (5 Cir. 1978).

■ Finally, a defendant's right to select counsel has never been thought to displace the inherent power of the court to require compliance with fundamental professional and ethical standards. Hence, a criminal defendant has no right to demand representation by a layman, *United States v. Wright*, 568 F.2d 142, and cases cited at 143 (9 Cir. 1978); *Pilla v. American Bar Association*, 407 F.Supp. 451 (D.Minn.1975), *aff'd*, 542 F.2d 56 (8 Cir. 1976); by a disbarred lawyer, *United States v. Grismore*, 546 F.2d 844, 847 (10 Cir. 1976); or by a lawyer who is not locally admitted and, although a

**2.** Canon 4: "A lawyer should preserve the confidences and secrets of a client."

Canon 5: "A lawyer should exercise independent professional judgment on behalf of a client."

member of the bar of another State, would be subject to disbarment under local disciplinary rules, *In re Rappaport,* 558 F.2d 87 (2 Cir. 1977).

■ More important, the court may bar an attorney from further participation at trial when he persists in disrupting the orderly course of proceedings and refuses to comply with rulings and directions of the court. *United States v. Dinitz,* 538 F.2d 1214 (5 Cir. 1976) (*en banc*), *cert. denied,* 429 U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977). No hard and fast rules govern the exercise of this power; the decision lies within the sound discretion of the trial judge who must undertake to balance, on a *sui generis* basis, the sixth amendment interest of the accused and the court's and public's interest in fair and orderly proceedings.[3]

In *Dinitz,* for example, the circuit court upheld the trial judge's decision to exclude counsel who, despite repeated admonitions, and in flagrant disregard of his obligations, grossly exceeded the permissible bounds of opening statement. In so doing, the Fifth Circuit was at pains to distinguish the district court's narrowly circumscribed authority to deny an otherwise qualified attorney leave to appear *pro hac vice*—permissible only upon a showing of misconduct "rising to the level of disbarment," see *In re Evans,* 524 F.2d 1004 (5 Cir. 1975)—from its power to ensure orderly proceedings by recourse to disqualification as a disciplinary sanction:

"Before a trial has begun, a court may have little first-hand knowledge of an attorney's competence (or lack thereof); moreover, since a pretrial hearing [to de-

termine the attorney's qualifications] would not interrupt any ongoing trial proceedings, fundamental fairness may require such a hearing in most of these situations. Once an attorney has been admitted *pro hac vice* and a case has proceeded to trial, however, the considerations are different. The interests of justice demand that a judge have a measure of discretion to take steps necessary to ensure that order is maintained. Unnecessarily to limit the judge's discretion would be to threaten the rights of not only the government, but the defendant as well. And when, as here, an attorney's conduct demonstrates a substantial likelihood of continuing disruption of the trial proceedings, we cannot say that it is an abuse of discretion to order that attorney to leave the courtroom." 538 F.2d at 1223–24.

Unquestionably, this power, like its counterpart, the contempt power, is susceptible to abuse and is to be exercised with great caution. *Cf. Sacher v. United States,* 343 U.S. 1, 12–14, 72 S.Ct. 451, 96 L.Ed. 717 (1952); *In re McConnell,* 370 U.S. 230, 236, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962); *In re Dellinger,* 461 F.2d 389, 397–401 (7 Cir. 1972). The dangers inherent in its exercise except under the most grave and compelling circumstances are evident. See *Harling v. United States, supra,* 387 A.2d at 1106.

■ In the court's opinion the damaging effect of Davidson's conduct of Raife's defense, so apparent even to the jury, provides grave and compelling reasons for disqualifying him. Even though we do not suggest wilful or contumacious conduct on

3. The guiding principle was aptly stated by Judge Tjoflat, writing for the Fifth Circuit, *en banc,* in *Dinitz, supra*:

"Traditionally, courts enjoy broad discretion to determine who shall practice before them and to monitor the conduct of those who do. Since attorneys are officers of the courts before which they appear, such courts are necessarily vested with the authority, within certain limits, to control attorneys' conduct. *See, e. g., Phipps v. Wilson,* 186 F.2d 748 (7 Cir. 1951); ABA Standards Relating to the Administration of Criminal Justice, The Function of the Trial Judge §§ 6.3, 6.5 (1972);

*cf. Theard v. United States,* 354 U.S. 278, [77 S.Ct. 1274, 1 L.Ed.2d 1342] (1957); 28 U.S.C. § 1654 (1970). And this is especially true during the course of a trial, when an attorney's misconduct may directly impede the orderly administration of justice. In this connection, of course, the Sixth Amendment is indisputably relevant, for it helps define the limits of judicial discretion. But the Sixth Amendment's right to *choice* of counsel merely informs judicial discretion—it does not displace it." 538 F.2d at 1219 (footnote omitted; emphasis in original).

his part, and would be ready to concede that the infirmities of advanced age account for his behavior, the fact remains that his incessant requests for repetition of statements by court, counsel and witnesses; his inability or unwillingness to abide by rulings of the court even after extended argument and explanation; and his obvious lack of proper preparation for cross-examination of key government witnesses, have made the conduct of a fair trial impossible. Where the integrity of the judicial process is at stake the court must surely possess the power to take whatever steps are necessary to preserve the orderly course of proceedings and to cure what Judge MacMahon has aptly described as an "incipient miscarriage of justice developing before [our] eyes," *United States v. Williams,* 411 F.Supp. 854, 858 (S.D.N.Y.1976), even if that means disqualifying an attorney from continuing his representation of a defendant.

■ We are not unmindful that the defendant Raife has consistently asserted a desire to be represented by Davidson; that in this circuit a defendant may not, if he is convicted, complain that counsel whom he has chosen knowingly and intelligently—that is, with full knowledge of his deficiencies—did not represent him competently; and that, even in the absence of such an election, a claim of ineffective assistance will not be sustained unless the defendant can show that the quality of representation he received was "of such a kind as to shock the conscience of the court and make the proceedings a farce and mockery of justice," *United States v. Wight,* 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied,* 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), a determination greatly influenced by the strength of the prosecution's case. See *United States v. Bubar,* 567 F.2d 192, 201–04 & n.15 (2d Cir. 1977). While this standard may well be suitable for purposes of appellate review and neatly serves the broader interest in the finality of judgments, it is undoubtedly informed by the assumption that trial courts do not ordinarily permit obviously incompetent attorneys to practice before them, and can hardly be thought to displace their power to exercise a proper degree of control over the competency of members of the trial bar.

The Supreme Court reminded trial courts of their *duty* to do so in *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). There, the Court held that a counseled defendant could not collaterally attack as the product of a coerced confession a plea of guilty except upon a showing that the advice he received from counsel and which prompted his plea was not "within the range of competence demanded of attorneys in criminal cases." *Id.* at 771, 90 S.Ct. at 1449. The test, in other words, is not whether the lawyer's advice was erroneous, but whether it was "reasonably competent," for as the Court stated:

"On the one hand, uncertainty is inherent in predicting court decisions; but on the other hand defendants facing felony charges are entitled to the effective assistance of competent counsel. Beyond this we think the matter, for the most part, should be left to the good sense and discretion of the trial courts with the admonition that if the right to counsel guaranteed by the Constitution is to serve its purpose, defendants cannot be left to the mercies of incompetent counsel, and that judges should strive to maintain proper standards of performance by attorneys who are representing defendants in criminal cases in their courts." *Id.* 90 S.Ct. at 1449.

See also *In re Taylor, supra,* 567 F.2d at 1191.

■ Finally, we doubt that a defendant can relieve the court of this obligation simply by asserting his right to be represented by a particular lawyer, without regard to—or despite—his competency. The court's duty to ensure effective advocacy is not defined solely by the defendant's interest in competent representation, for the power to disqualify counsel may be utilized "where necessary to preserve the integrity of the adversary process." *Board of Education of New York v. Nyquist,* 590 F.2d 1241 (2d Cir. 1979). *Cf. Harling v. United States, supra,*

387 A.2d at 1105 (dictum).[4] As Chief Justice Burger explained in his dissenting opinion in *Faretta v. California*, 422 U.S. 806, 839–40, 95 S.Ct. 2525, 2543, 45 L.Ed.2d 562 (1975) (internal citations omitted):

"Nor is it accurate to suggest . . . that the quality of his representation at trial is a matter with which only the accused is legitimately concerned. . . Although we have adopted an adversary system of criminal justice, see *Gideon v. Wainwright*, [372 U.S. 335, 344, [83 S.Ct. 792, 9 L.Ed.2d 799] (1963)], the prosecution is more than an ordinary litigant, and the trial judge is not simply an automaton who insures that technical rules are adhered to. Both are charged with the duty of insuring that justice, in the broadest sense of that term, is achieved in every criminal trial. See *Brady v. Maryland*, 373 U.S. 83, 87, and n.2, [83 S.Ct. 1194, 1196–1197, 10 L.Ed.2d 215] (1963); *Berger v. United States*, 295 U.S. 78, 88, [55 S.Ct. 629, 633, 79 L.Ed. 1314] (1935). That goal is ill-served, and the integrity of and public confidence in the system are undermined, when an easy conviction is obtained due to the defendant's ill-advised decision to waive counsel. The damage thus inflicted is not mitigated by the lame explanation that the defendant simply availed himself of the 'freedom' 'to go to jail under his own banner . . .' *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (CA2 1965). The system of criminal justice should not be available as an instrument of self-destruction."

While these broad considerations were not, in the *Faretta* majority's view, sufficient to permit interference with a criminal defendant's *absolute* right to waive representation by counsel and to proceed *pro se*,[5] we think that the court's duty to safeguard the integrity of the judicial process is of no less importance than the court's equally weighty obligation to honor a defendant's exercise of his qualified right to choice of counsel. Certainly, this must be so where, as here, the defendant is only 21 years old, is inexperienced in the intricacies of the law, is unnecessarily influenced by economic considerations, and labors under certain misapprehensions with respect to the quality of representation that is his due. See Tr. (11/9/78) at 295–96, quoted *supra*. On the state of the present record, we would be loathe to conclude that Raife has "knowingly and intelligently exercised his constitutional right to be represented by counsel of his own choice," and thereby forfeited his complementary right to competent representation. *United States v. Bubar, supra*, 567 F.2d at 203. See generally *United States v. Garafola*, 428 F.Supp. 620, 623–24 (D.N.J.1977), *aff'd sub nom. United States v. Dolan*, 570 F.2d 1177 (3 Cir. 1978).

In our view, Davidson's representation of his client in these proceedings falls far short of the level of competency required of criminal defense counsel. We note again his failure to pursue needed discovery; his failure timely to move for a bill of particulars, severance and change of venue; his lack of preparation for witness examination; his inability to hear the proceedings,[6] with its

4. Although in *Harling* the District of Columbia Court of Appeals held that the trial judge had improperly removed appointed counsel over the vigorous objection of both attorney and defendant, it did note that the right to select counsel is qualified and that "[g]ross incompetence or physical incapacity of counsel, or contumacious conduct that cannot be cured by a citation for contempt may justify the court's removal of an attorney, even over the defendant's objection." 387 A.2d at 1105.

5. In order to do so, however, the defendant must persuade the court that his decision to forego "many of the traditional benefits associated with the right to counsel" is knowing and intelligent. 422 U.S. at 835, 95 S.Ct. at 2541.

Moreover, the right of self-representation does not relieve the defense of its obligation to respect "the dignity of the courtroom" and "to comply with relevant rules of procedural and substantive law," and the "trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Id.* at 834 n.46, 95 S.Ct. at 2541 n.46.

6. Despite his obvious hearing impairment and the urgings of the court, Davidson insisted throughout that he neither had nor needed a hearing aid. See, *e. g.*, Tr. (11/13/78) at 290–92. Indeed, it was only after a mistrial was declared that Davidson indicated that he would

**856**

consequent disruptive effect on the clear presentation of evidence; and his failure to abide by rulings of the court and inability generally to conduct himself before the jury in a manner consistent with his obligations to his client,[7] thereby subverting the integrity of the fact-finding process.

Accordingly, Davidson is disqualified from further representing the defendant Raife in this action. This remedy is applied with some reluctance, and with regret that Davidson has not seen fit to accept the court's suggestion that he remain to assist substitute counsel, in view of his familiarity with the case.[8] Unfortunately, we see no alternative for, as Judge MacMahon observed in *United States v. Williams, supra,* in defense of his decision to disqualify assigned counsel whose incompetence was apparently the result of inexperience:

"Ineptness and incompetence cannot be magically transformed to skilled advocacy during the course of a single trial. Nor can the unfairness inevitably resulting from an inept defense be cured or overcome by an instruction to the jury. We are also mindful of the potential prejudice to a defendant when a judge is continually forced to take over questioning of witnesses or to correct or admonish the defense attorney." 411 F.Supp. at 858.

The defendant Raife will be required to appear before the court forthwith so that the question of his future representation in this action may be resolved.

SO ORDERED.

---

undergo examination and obtain such a device if needed. See Tr. (11/17/78) at 814.

**7.** Canon 6 of the Code of Professional Responsibility recites that "A lawyer should represent a client competently." The first Ethical Consideration thereunder provides:

"Because of his vital role in the legal process, a lawyer should act with competence and proper care in representing clients. He should strive to become and remain proficient in his practice and should accept employment only in matters which he is or intends to become competent to handle." EC 6–1 (footnote omitted).

**8.** It should be noted that the government opposed this suggestion of the court to the extent that Davidson might thus be permitted actively to engage in the examination of witnesses before the jury. In any event, Davidson resisted the proposal and was seemingly disinclined to present it to his client. See Tr. (11/17/78).