UNITED STATES of America,

v.

Matthew IANNIELLO, a/k/a "Matty the Horse", Benjamin Cohen, a/k/a "Benny Cohen," Vincent Fiorillo, a/k/a "Jimmy Fiorillo," Michael Fiorillo, a/k/a "Red Fiorillo," Anthony Fiorillo, Joseph Fiorillo, and Michael Marchini, a/k/a "Mike Atlas," Defendants.

No. S 85 Cr. 115 (CBM).

United States District Court, S.D. New York.

Sept. 3, 1985.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y. by Howard E. Heiss, James B. Rather, Robert Ullman, New York City, for U.S.

Jay Goldberg, New York City, for defendant Matthew Ianniello.

Goldman & Hafetz by Frederick Hafetz, New York City, for defendant Benjamin Cohen.

Fischetti, Feigus & Pomerantz by Ronald Fischetti, New York City, for defendant Vincent Fiorillo.

Gerald B. Lefcourt, New York City, for defendant Michael Fiorillo.

Hoffman, Pollok & Gasthalter, John Pollok, New York City, for defendant Anthony Fiorillo.

Power, Weiss & Marks by Jonathan Marks, New York City, for defendant Joseph Fiorillo.

Richard Levitt, New York City, for defendant Michael Marchini.

## OPINION

MOTLEY, Chief Judge.

The recently and hastily enacted Comprehensive Forfeiture Act of 1984, Pub.L. No. 98–473, Title II, has, and no doubt, will continue to result in many thorny legal issues to be considered by the courts. Two such issues are before this court. Defendants have made an application seeking the

release of certain funds now subject to a restraining order which was issued pursuant to an *ex parte* application by the Government. Additionally, defendants seek an order declaring that attorneys' fees are exempt from forfeiture under 18 U.S.C. section 1963.

FACTS

Defendants Matthew Ianniello, Benjamin Cohen, Vincent Fiorillo, Michael Fiorillo, Anthony Fiorillo, Joseph Fiorillo and Michael Marchini, in a twenty-nine count indictment, have been charged with violating the Racketeer Influenced and Corrupt Organizations ["RICO"] statute, and with committing mail fraud and extortion. Defendants are charged in the indictment with concealing their ownership interests in Consolidated Carting Corporation, a waste carting company, in order to fraudulently obtain waste removal licenses from the New York City Department of Consumer Affairs. Defendants also are alleged to have defrauded Consolidated Edison Company of New York ["Con Edison"] by causing other waste carting companies to refrain from collecting or attempting to collect waste from the utility. In addition, defendants allegedly caused other waste carting companies to refrain from submitting bona fide bids for the collection of Con Edison's waste. Furthermore, defendants are alleged to have concealed the identity of those who had interests in Con Edison's waste removal contracts by using "front" corporations and to have caused Con Edison to overpay them for waste collection. In furtherance of this scheme, defendant Vincent Fiorillo is alleged to have extorted competing waste carting companies by threatening their owners in order to obtain their waste removal contracts from Con Edison.

On February 15, 1985, Judge Palmieri, upon the *ex parte* application of the United States Attorney for the Southern District of New York, issued a restraining order prohibiting the sale, assignment, pledge or disposition in any manner of certain property belonging to defendants or certain companies owned and controlled by them, to

wit: Consolidated Carting Corporation ["Consolidated Carting"], Fiorillo Brothers of New Jersey, Inc. ["Fiorillo Brothers"], Tri-Compaction Sales, Inc., and Atlas Sanitation Co. Inc. The *ex parte* order does not provide for a hearing to contest the Government's right to restrain these assets. Although the Government and defendants reached an agreement earlier on defendants' use of certain funds which were subject to forfeiture, the parties have not been able to agree upon whether retained earnings from Consolidated Carting and Fiorillo Brothers of New Jersey may be distributed to defendants. Defendants, therefore, have made an application to this court requesting that defendants be permitted to distribute a portion of the profits they have earned since the filing of the indictment in this case.

The United States Attorney has advised defendants and their counsel that should defendants be convicted of the RICO counts and judgments of forfeiture be obtained against them, the Government might seek to obtain attorneys' fees paid to counsel to satisfy the judgments. The Government asserts that such fees are subject to forfeiture under 18 U.S.C. section 1963.

Defendants' counsel, therefore, have entered conditional appearances in this case, agreeing to represent defendants only on condition that this court finds legal fees cannot be forfeited under 18 U.S.C. section 1963(e) and (m). Defendants have brought this motion for an order providing that legal fees paid by defendants in connection with this case are exempt from forfeiture under 18 U.S.C. section 1963(m) in order that they may be represented by their chosen counsel.

For the following reasons, defendants' motions are granted.

DISCUSSION

*Forfeiture of Attorneys' Fees*

18 U.S.C. section 1963(c) of the Comprehensive Forfeiture Act of 1984 provides:

All right, title, and interest in property described in subsection (a) vests in the United States upon the commission of

the act giving rise to forfeiture under this section. Any such property that is subsequently transferred to a person other than the defendant may be subject of a special verdict of forfeiture and thereafter shall be ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (m) that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Section 1963(m) of 18 U.S.C. permits a third party to challenge the forfeiture of property transferred to him by a defendant convicted of RICO violations. The third party, after the judgment of forfeiture has been entered, has the burden of petitioning the court to vacate the forfeiture. An opportunity is provided to the third party petitioner to present his case at a post-conviction hearing. The third party petitioner must establish by a preponderance of the evidence that:

(A) the petitioner has a legal right, title or interest in the property, and such right, title or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.

(B) the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section....

18 U.S.C. section 1963(m)(6).

Defendants urge this court to interpret section 1963 as precluding the forfeiture of legitimately paid legal fees or to declare the statute unconstitutional in violation of the Sixth Amendment right to the effective assistance of counsel. The legislative history of this provision, according to defendants, clearly establishes that the Congressional purpose in enacting section 1963 was to ensure that criminal defendants could not avoid forfeiture by the fraudulent transfer of their assets to confederates. Therefore, defendants argue, attorneys' fees do not fall into this category and should not be subject to forfeiture under section 1963.

The Government, however, contends that the Sixth Amendment does not prevent the Government from recovering forfeitable assets which have been transferred to an attorney. Additionally, according to the Government, Congress intended and the statute provides that forfeitable property which is transferred to an attorney may be forfeited to the same extent as forfeitable property transferred by the defendant to any other third party.

The plain language of section 1963 does not provide explicitly that attorneys' fees are forfeitable. It refers only to property or assets transferred to third parties in general. 18 U.S.C. section 1963(c). The statute also provides for a post-conviction hearing whereby third parties may challenge a judgment of forfeiture pertaining to property transferred to them, *see* section 1963(m), but, again, makes no reference to attorneys' fees. Because of the absence of any indication as to whether or not attorneys' fees are exempt from forfeiture, the legislative history of the Forfeiture Act must also be considered.

■ The scant legislative history is devoid of any explicit reference as to whether or not attorneys' fees are forfeitable. In discussing section 1963(m), however, the Senate Report states that "[t]he provision should be construed to deny relief to third parties acting as nominees of the defendant or who have knowingly engaged in sham or fraudulent transactions. The standard for relief reflects the principles concerning voiding of transfers set out in 18 U.S.C. section 1963(c) as amended by the bill." SEN.REP. of P.L. 98–473, p. 209 n. 47, U.S.Code Cong. & Admin.News 1984, pp. 3182, 3392. Accordingly, it is evident that bona fide attorneys' fees paid to defense

counsel who serve the defendants' needs within our adversary system were not intended to be forfeitable by Congress, for it cannot be said that such fees were paid as part of an artifice or sham to avoid forfeiture. *See also United States v. Rogers,* 602 F.Supp. 1332, 1347 (D.Colo.1985).

Even absent this guidance in the legislative history, this court still would be required to find that attorneys' fees paid for legitimately rendered attorneys' services are not forfeitable. It is a fundamental principle of statutory interpretation that in deciding among possible interpretations of a statute, the court must select an interpretation that appears to be consistent with the constitutionality of the statute. *See, e.g., Gutknecht v. United States,* 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532 (1970); *United States v. Rumely,* 345 U.S. 41, 45, 73 S.Ct. 543, 545, 97 L.Ed. 770 (1953). Additionally, while the Government's goal of combatting illegal racketeering by attacking "the economic aspects of these crimes," SEN.REP. of P.L. 98–473 p. 191, U.S.Code Cong. & Admin.News 1984, p. 3374, is laudible, it must not infringe upon the protected constitutional rights of defendants. Congress recognized this fact as demonstrated in the legislative history of a related bill, Comprehensive Drug Penalty Act of 1984, which stated "[n]othing in this section is intended to interfere with a person's Sixth Amendment right to counsel." H.R. Rep. No. 845, part 1, 98th Cong., 2d Sess., p. 19 n. 1.

█ In accordance with the Sixth Amendment of the Constitution, a person accused of a crime has the right to be assisted by counsel in his defense. *Powell v. Alabama,* 287 U.S. 45, 66, 53 S.Ct. 55, 63, 77 L.Ed. 158 (1932). As the Supreme Court has recognized, this right "is of such a character that it cannot be denied without violating those 'fundamental principles of liberty and justice which lie at the bases of all our civil and political institutions.'" *Id.* at 67, 53 S.Ct. at 63, quoting *Hebert v. Louisiana,* 272 U.S. 312, 316, 47 S.Ct. 103, 104, 71 L.Ed. 270 (1926). *See also United States v. Mohabir,* 624 F.2d 1140, 1149 (2d Cir.1980) ("right to obtain the assistance of counsel at all crucial stages is essential if both the symbol and reality of a fair trial are to be preserved").

█ In addition to the right to counsel, defendants who can afford to retain counsel have a qualified right to obtain counsel of their choice. *United States v. Curcio,* 694 F.2d 14, 22–23 (2d Cir.1982); *United States v. Cunningham,* 672 F.2d 1064, 1070 (2d Cir.1982); *United States v. Ostrer,* 597 F.2d 337, 341 (2d Cir.1979). Counsel of choice is not to be deprived absent a compelling need to assure the "prompt, effective and efficient administration of justice." *United States v. Burton,* 584 F.2d 485, 489 (D.C.Cir.1978), *cert. denied* 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979). Statutory procedures or prosecutorial power also are not permitted to unreasonably abridge the right to counsel of choice. It is evident that the forfeiture of attorneys' fees would impinge upon defendants' right to counsel of choice.

█ This court need not determine, however, whether forfeiture of attorneys' fees unreasonably infringe upon defendants' right to counsel of their own choice, because more importantly, forfeiture would result in an abridgement of their right to counsel. As Judge Leval recently noted in *United States v. Badalementi,* SS. 84 Cr. 236 (PNL), slip op. at 7–8, defendants in RICO actions would find it difficult, if not impossible, to secure representation if attorneys' fees were forfeitable. A defendant's criminal defense counsel, who obviously had read the indictment and discussed the charges with his client, could not convincingly argue, if his client were convicted, that he lacked notice that the money received in payment of his legal fees may have come from the proscribed racketeering activity as required under section 1963(m). Counsel, aware that conviction of his client could result in forfeiture of his fee, would be reluctant to handle such a case. Thus a defendant, even if innocent of the RICO charges, would be denied the opportunity to obtain counsel.

■ The Government's argument that defendants would be able to obtain representation under the Criminal Justice Act, 18 U.S.C. section 3006A, [hereinafter "CJA counsel"], does not resolve the problem. For if a defendant has assets from legitimate sources available to pay counsel, he is not entitled to CJA counsel. The Criminal Justice Act provides for the furnishing of representation to a person "financially unable to obtain adequate representation." 18 U.S.C. section 3006A. A defendant, with money available to pay an attorney, could not lawfully swear under oath, whether in an affidavit or by oral testimony, that he was financially unable to obtain counsel. *See* Revised Plan for Furnishing Representation Pursuant to the Criminal Justice Act (18 U.S.C. section 3006A) for the Southern District of New York, section VI(C) [hereinafter "Plan"]. *See also* 18 U.S.C. section 3006A. The Government's assertion that it would not contest such an appointment would not remedy the situation. The duty rests upon a judicial officer to determine whether a person is financially eligible for the appointment of counsel and not the United States Attorney's Office. *See* Plan, section VI(C).

While it is true that defense counsel might question defendant prior to accepting representation in order to determine whether the money to be paid for the legal fee came from legitimate sources as opposed to illicit undertakings, this would not cure the constitutional problems inherent in the forfeiture of attorneys' fees. For if the attorney were to represent the defendant and the defendant were convicted, defense counsel, in challenging the forfeiture of the legal fee, would be required to establish that he had no reasonable cause to believe that the property was subject to forfeiture. 18 U.S.C. section 1963(m). Such disclosure would necessitate the disclosure of privileged matter confided to counsel by his client. If the attorney were to advise his client of the possible disclosure, the free flow of information required between attorney and client for an adequate defense would be chilled, depriving defendant of effective representation under the Sixth Amendment.

Furthermore, defense counsel in such cases might be considered as having accepted a contingent fee in a criminal case in violation of the Code of Professional Responsibility. *See, e.g.*, Code of Professional Responsibility, McKinney's New York Judiciary Law, Vol 29 [hereinafter "Code of Professional Responsibility"] DR 2–106(C).[1] The attorney's retention of his fee would be dependent on whether or not his client was acquitted. Only if defendant were acquitted would defense counsel be ensured of receiving compensation for the legal services rendered.

Still other ethical problems arise if bona fide attorneys' fees are forfeitable. Defense counsel might seek to negotiate a guilty plea by his client, motivated, not by his client's best interests, but rather by his own desire to avoid forfeiture of his fee. On the other hand, if the Government were unwilling to forego forfeiture of the legal fees in exchange for a guilty plea, the attorney's financial interest might lead him to advise his client to go to trial, hoping for a favorable forfeiture verdict, even if the client's interest in leniency would be served best by pleading guilty. Such actions would violate the attorney's duty to give independent advice solely for the benefit of his client. Code of Professional Responsibility, DR 5–103(A); EC 5–1, 2, 3, 7.

Clearly defendants' Sixth Amendment right to counsel would be violated if attorneys' fees were forfeitable. For even if defendant were able to retain counsel, such representation inevitably would result in conflicts between attorney and client, and deprive defendant of effective representation.

Despite the Government's argument to the contrary, forfeiture of attorneys' fees, or even the threat of such forfeiture, is of

---

**1.** Contingent fees for defense attorneys in a criminal action are void as against public policy. "'In criminal cases, the rule is stricter because of the danger of corrupting justice.'" Code of Professional Responsibility, DR 2–106(C) n. 3.

greater significance than forfeiture of one's Rolls Royce. Forfeiture of the latter affects only one's property rights, while forfeiture, or the possibility of forfeiture, of attorneys' fees affects, in a very material way, defendant's preparation of his legal defense and the determination of his guilt or innocence. *See United States v. Ray,* 731 F.2d 1361, 1366 (9th Cir.1984). This is particularly true in cases as complex as the instant action, where counsel had been retained prior to indictment, have been preparing for trial for several months, and complex issues of law are involved.

The Government, in contending that attorneys' fees are not exempt from forfeiture, relies heavily on *United States v. Long,* 654 F.2d 911, 916–17 (3rd Cir.1981) and *United States v. Raimondo,* 721 F.2d 476, 478 (4th Cir.1983), *cert. denied* 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984). But the forfeiture of fees in those actions were not challenged on Sixth Amendment grounds and therefore are of little precedential value for this motion. In addition, in *Raimondo, supra,* the court held that counsel could still oppose the forfeiture of the property transferred to them. 721 F.2d 478.

■■■■■ This is not to say that moneys paid to or assets transferred to counsel may never be subject to forfeiture. Where property has been transferred to an attorney as part of a sham or fraudulent transaction, or where counsel is merely acting as a nominee for defendant, such property may be subject to forfeiture. The Sixth Amendment does not create a shield permitting counsel to act "as conduits of information or of commodities necessary to criminal schemes or as launderers of money." *United States v. Shargel,* 742 F.2d 61, 64 (2d Cir.1984). Since there is no allegation that defense counsel in this action are seeking payment of legal fees for other than legitimately rendered legal services, however, the defendants' Sixth Amendment right to counsel compels the exemption of attorneys' fees from forfeiture.

*Restraint of Proceeds*

Defendants also have made an application seeking the release of at least a portion of the retained earnings of Consolidated Carting and Fiorillo Brothers earned subsequent to their indictment and restrained pursuant to the *ex parte* restraining order issued by Judge Palmieri. Defendants argue that without the use of these funds they would be unable to pay their chosen counsel their agreed upon attorneys' fees and thereby be denied the right to counsel of their choice. In addition, defendants contend that because section 1963(e)(1)(A) does not provide for a hearing as required by the due process clause, it is unconstitutional. If the provision is to be deemed constitutional according to defendants, due process requires that the right to a hearing be implied. The Government argues that it is able to restrain the retained earnings but is willing to release some of the funds in order that defendants may pay their attorneys a reasonable attorneys' fees. The Government suggests that a reasonable fee would be eighty dollars per hour.

Any restraint of defendants' assets which render defendants unable to pay their counsel affects their right to choice of counsel.[2] While it is true "[e]conomic realities impose one obvious limitation on defendant's 'right' to be represented by a particular attorney," *United States v. Rogers,* 471 F.Supp. 847, 851 (E.D.N.Y.1979), the Government's action in lawfully obtaining an *ex parte* restraining order has created defendants' financial inability to pay counsel of their choice. Defendants, who otherwise would have been able to afford counsel, are barred from utilizing these funds to hire counsel of their choice during the period of time in which they are pre-

---

**2.** Where defendants' funds have been restrained pursuant to a restraining order, rendering them financially unable to afford representation, CJA counsel could be appointed to represent them. Accordingly, if there is a Sixth Amendment violation which arises it would be a violation of the right to counsel of choice.

sumed innocent. One court has rejected any distinction between a defendant rendered indigent by the circumstances of life and one who became indigent by the actions of the Government. *United States v. Brodson*, 241 F.2d 107 (7th Cir.), cert. denied, 354 U.S. 911, 77 S.Ct. 1297, 1 L.Ed.2d 1428 (1957). *See also United States v. Bello*, 470 F.Supp. 723, 725 (S.D.Cal.1979) (restraining order depriving defendant of counsel of choice upheld).

The right to counsel of one's own choosing is, as previously mentioned, only a qualified right. The protection provided by the right to choice of counsel, however, is no more than preventing arbitrary dismissal of chosen counsel. *In Re Grand Jury Subpoena Served Upon John Doe, Esq.*, 759 F.2d 968, 975–76 (2d Cir.1985). Any infringement of the right, however, is only to be as a last resort. *Id.* at 975.

Under the facts and circumstances of this case it is not necessary for the court to determine whether the restraining order is improper because it deprives defendants of their right to counsel of their choice. Counsel for defendants have been preparing for trial for many months. In fact, they had been retained long before an indictment was returned by the grand jury. Additionally, complex issues of law are involved in this case and extensive motions have been submitted on behalf of defendants. Were defendants deprived of their attorneys' assistance in their defense, they would be deprived, in this case, of a necessity in life. If other attorneys were assigned to represent defendants in this stage of the action, additional time would be required to prepare their defense and the new attorneys would not, due to time constraints, be as familiar with the various aspects of this complex criminal case.

■ The injunction may be modified, as the Government acknowledges, to enable defendants to pay for the necessities in life. As noted by Judge Kane in *United States v. Rogers, supra*, 602 F.Supp. at 1348 n. 5, legal fees to pay counsel of choice is a necessary in life, at least under the circumstances of this case. *See also, Wolf v.*

*Friedman*, 20 Ohio St.2d 49, 253 N.E.2d 761, 764–765 (1969) and the cases cited therein.

■ Therefore the injunction is modified to permit the distribution of the retained earnings of Consolidated Carting and Fiorillo Brothers to pay defense counsel the unpaid portion of their retainers.

Since defendants were seeking the release of the retained earnings in question for the purpose of paying their counsel, it is unnecessary for the court to determine what form of hearing is required after the issuance of an *ex parte* restraining order. That issue may be left for another day.

CONCLUSION

Defendants' motions are granted. Should a verdict of forfeiture be rendered against defendants after a trial on the merits, the attorneys' fees paid to counsel for legitimately rendered services will not be forfeitable. In addition, because attorneys' fees have been found to constitute necessities, the restraining order of February 15th, 1985, is modified to allow defendants to pay their counsel from the retained earnings of Consolidated Carting and Fiorillo Brothers which were earned subsequent to the indictment.